Chauncey Ray DEPUY and Paul E. Depuy, Appellants,

v.

Roland HOEME, Appellee.

Ray DEPUY, Appellant,

v.

OKLAHOMA WATER RESOURCES BOARD, Appellee.

Nos. 50472, 51960.

Supreme Court of Oklahoma.

Feb. 19, 1980.

Rehearing Denied June 2, 1980.

Robert G. Grove, Oklahoma City, for appellants.

David K. Petty, Larry L. Field, Guymon, and Joseph F. Rarick, Norman, for appellee, Roland Hoeme.

Larry Derryberry, Atty. Gen., Amalija J. Hodgins, Asst. Atty. Gen., Oklahoma City, for appellee, Oklahoma Water Resources Board.

BARNES, Justice:

This case arises out of two separate causes of action, both dealing with the use of water from a playa lake, Wild Horse Lake, located in Texas County, Oklahoma. Because both cases (*Depuy v. Hoeme*, Case No. 50,472, and *Depuy v. Oklahoma Resources Board*, Case No. 51,960) deal with use of water from Wild Horse Lake and because both arise out of the same factual background, the cases were, by order of this Court, consolidated for appeal under the surviving number of 50,472.

I.

We will first consider *Depuy v. Hoeme*. Wild Horse Lake is a natural playa lake located in the SW/4 of Section 4, the SE/4 of Section 5, the NE/4 of Section 8, and the NW/4 of Section 9, all in Township 5 North, Range 15 E.C.M., Texas County, Oklahoma. The playa lake is shaped like a saucer, has a flat bottom, and when full is relatively shallow. Such lakes have no specific stream as their source, and have no outlets; the only natural escape for the water in such lakes is evaporation and seepage. In September of 1975, Appellee, Ronald Hoeme, purchased the NE/4 of Section 8 and the NW/4 of Section 9. A few days after such purchase, Mr. Hoeme filed a "stream water" appropriation application with the Oklahoma Water Resources Board (Board), seeking a permit to appropriate all of the accumulated water in Wild Horse Lake. Subsequently, Mr. Hoeme amended his application, first requesting that he be allowed to appropriate 3,226 acre feet of water from the lake, for his beneficial use, and lastly amended his application seeking appropriation of 723 acre feet per calendar year. The last amendment was precipitated by a finding of fact by the Board that only 723 acre feet of water was available to Mr. Hoeme. This last application was approved by the Board.

On the same day that Mr. Hoeme filed his application with the Water Resources Board, he began excavating a pit in the northwest corner of the NW/4 of Section 9 so that the accumulated water in Wild Horse Lake would cover a smaller area of his land and would be easy to pump for irrigation use. In order to conduct such excavation, Hoeme constructed a temporary dike between the NW/4 of Section 9 and the SW/4 of Section 4. This temporary dike kept the natural run-off water and irrigation tail water (the natural source of this playa lake) from coming onto his property while the excavation was conducted.

The construction of this temporary dike resulted in a lawsuit against Mr. Hoeme, instituted by the Appellants, Chauncey Ray and Paul E. Depuy. In their suit, the Depuys sought a temporary order, temporary injunction, and permanent injunction, prohibiting Appellee Hoeme from maintaining the dike which backed water up to the north of their property. Initially, the Depuys also sought an injunction against the Oklahoma Water Resources Board enjoining the Board from considering Appellee Hoeme's application for the permit heretofore mentioned. The action against the Board was dismissed below.

Mr. Hoeme answered, denying Appellants' allegations, and counterclaimed by way of a separate prayer for a declaratory judgment that he had the right to perform construction work on his property and in so doing that he may "divert, cast back or pass along" the water of Wild Horse Lake if the same can be done without doing injury to contiguous landowners.

During the pendency of this litigation, Appellants Depuy constructed a road across the south line of the SW/4 of Section 4. After the construction of this road, which also had the effect of acting as a makeshift dike which kept much of the drainage water from reaching the portion of Wild Horse Lake on Appellee Hoeme's land, Mr. Hoeme amended his counterclaim, seeking an injunction against the Depuys, asking that they be enjoined from maintaining the road-dike they had constructed.

After hearing testimony and receiving evidence, including a view of the premises, the trial court entered judgment as follows: The court denied the Depuys' request for injunctive relief, and granted Appellee Hoeme a mandatory injunction, requiring Appellants Depuy to remove their road or put culverts in it so that surface run-off water could flow into Appellee Hoeme's land.

Appellants Depuy have perfected an appeal from the trial court's order. On appeal, the Appellants stated that the ultimate question to be resolved is: Can a landowner build a road, dike, or levee to catch and hold run-off surface water on his own land before such water enters a definite stream? We do not agree with the Appellants' characterization of the question before us. The ultimate issue to be determined on appeal is whether the water being caught by Appellants' road-dike is run-off surface water or whether it is water within a definite stream.

■ The trial court found that Appellants' road-dike was constructed at the south end of the SW/4 of Section 4. Exhibits show that the natural bed of Wild Horse Lake extends almost one-eighth of a mile into that quarter section on its west side. The bed of the lake then extends east, occupying about one-half of the southwest quarter of that SW/4 and about one-quarter of the southeast quarter of that quarter section. Thus, the road-dike, or almost all of it, is in the natural bed of Wild Horse Lake and the first water which the road-dike traps and a goodly amount thereafter is trapped in the bed of the lake. Accordingly, we hold that the water being trapped by Appellants Depuy was no longer surface water, because it ceased to possess one of the essential characteristics of surface water, a diffused flow over the ground, not concentrated or confined in a channel forming a definite stream, nor contained or defined in a body of water conforming to the definition of a lake or a pond.[1] As the

lake water no longer constituted diffused surface water, it could not be captured by Appellants Depuy at the site of the road-dike. Accordingly, we affirm the trial court's ruling that the Appellants must either remove their road-dike from the bed of the lake, or construct culverts under it to enable passage of the water under the road. In so holding, we note that the Depuys' reliance upon *Doney v. Beatty*, 124 Mont. 41, 220 P.2d 77 (1950), is misplaced. In that case, the trial court was dealing with several small swales or depressions, not a playa lake. Additionally, the evidence showed that in order to capture and use the water accumulated on the sloping land, the defendants had constructed dikes or small dams at certain low places or depressions on their premises to impound such diffused surface water in man-made reservoirs for their livestock. In the case before us, no such impoundment was necessary, as a natural lake is present. Accordingly, we are not persuaded by the ruling of the Montana Court in that case.

■ We next consider the propriety of the trial court's ruling which denied Appellants Depuys' request for injunctive relief. In seeking injunctive relief against Mr. Hoeme, Appellants Depuy alleged as the sole grounds for their right to relief the fact that Mr. Hoeme's project would cause their land to become submerged and subject to flooding from Wild Horse Lake. The facts presented at trial simply do not support Appellants' allegation. In fact, as the trial court found, and the evidence introduced demonstrated, Mr. Hoeme's project, once the temporary dike was removed, would probably lessen the danger of flood damage to Appellants' land, rather than increase such possibility. Thus, we hold that the trial court was correct in ruling that the Appellants were not entitled to injunctive relief, as they had not presented evidence demonstrating that they would suffer irreparable harm or damage because of Mr. Hoeme's excavation.

1.  *Oklahoma Water Resources Board v. Central Oklahoma Master Conservancy Dist.*, Okl., 464 P.2d 748 (1969); *Iven v. Roder*, Okl., 431 P.2d 321 (1967); and *Lynn v. Rainey*, Okl., 400 P.2d 805 (1965).

For the above stated reasons, we affirm the action taken by the trial court in *Depuy v. Hoeme.*

## II.

We now turn our attention to the trial court's ruling in *Depuy v. Oklahoma Water Resources Board.* As mentioned above, Mr. Hoeme filed a stream water appropriation application with the Oklahoma Water Resources Board, and, based upon that application, Mr. Hoeme was issued a permit to appropriate 723 acre feet of water per year from Wild Horse Lake. Ray Depuy perfected an appeal from the ruling of the Oklahoma Water Resources Board to the District Court of Oklahoma County. On appeal, Mr. Depuy argues that the Water Resources Board erred in issuing a permit to Mr. Hoeme because the water in Wild Horse Lake was not in the public domain and thus not subject to regulation by the Board, as such water was not running water in a definite stream over or under the surface of the land within the meaning of 60 O.S.1971, § 60, or 82 O.S.Supp.1972, §§ 105.1, et seq. Additionally, Mr. Depuy asserted that the water from Wild Horse Lake was in fact a collection of diffused surface water which was subject to capture and appropriation by the owner of the land over which it flowed. By way of a cross-petition in the action in the District Court, Mr. Hoeme alleged that the Board erred in not granting a permit to him for the original amount of water requested, rather than the 723 acre feet per year which was appropriated.

■ After receiving evidence and after argument of counsel, the trial court affirmed the action taken by the Oklahoma Water Resources Board in all respects, save that it found that the Board had erred in appropriating only 723 acre feet per year to Mr. Hoeme. Then, based upon that error and the evidence, the trial court entered an order permitting Mr. Hoeme to appropriate 3,226 acre feet per year from Wild Horse Lake. Mr. Depuy has perfected an appeal from the trial court's order. In that appeal, he raised the following question: Is water of a playa lake "stream water", and therefore subject to appropriation by the Oklahoma Water Resources Board under Oklahoma law? Appellant Depuy argues that playa lake water is not stream water, and therefore is not subject to appropriation by the Board. Rather, Appellant asserts that such water is diffused surface water which may be captured and used without seeking an appropriation from the Board. Having already held that the water in Wild Horse Lake is not diffused surface water, it is only necessary for us to determine whether that water is subject to appropriation under Oklahoma law. We hold that it is.

Title 82 O.S.Supp.1972, §§ 105.1, et seq., provides for the appropriation of stream water in Oklahoma.

Subsection A of Section 105.1 of Title 82 defines "definite stream" as "a water course in a definite, natural channel, with definite beds and banks, originating from a definite source or sources of supply." That Section also indicates that the stream may flow intermittently or at irregular intervals if that is characteristic of the source of supply in the area.

Subsection A of Section 105.2 of that Act provides in part that:

" . . . The provisions of this act shall not apply to farm ponds or gully plugs which are not located on definite streams and which have been constructed under the supervision and specifications of the Soil and Water Conservation Districts."

Wild Horse Lake is a water course having definite, natural channels, with definite beds and banks, which originates from definite sources of supply. In the case before us, the record below indicates, and the trial court found, that Wild Horse Lake has a watershed of approximately 22,000 acres and receives the tail water from thirty irrigation wells in Texas County. These tail waters and watershed form the sources of Wild Horse Lake. By their nature, they flow only intermittently, but such intermit-

**232**

tent flow does not preclude Wild Horse Lake water from being stream water.[2] This being the case, we hold that Wild Horse Lake is stream water subject to appropriation in Oklahoma. In so holding, we would note that Section 105.2, as quoted above, specifically excludes farm ponds and gully plugs from coming within the purview of the Act. This specific exclusion supports our holding, for it is an indication that structures such as ponds (the only difference between a pond and a lake being size) would normally come within the definition of definite stream.

Additionally, if we were to hold that lake water did not come within the definition of stream water, we would have construed the acts of the Legislature to have created a vast source of water in Oklahoma, which would not be available for appropriation, and at the same time not available to be captured as surface water. We can hardly say that it was the intent of the Legislature to create such a gap, particularly in light of water supply problems which exist in this State. We would also note that the term "stream" is generally thought to be synonymous with the term "water course", which encompasses lakes.[3]

As we hold that the water in Wild Horse Lake was appropriable, and as the only issue before us on appeal was whether the water was appropriable, we affirm the action taken by the trial court in *Depuy v. Oklahoma Water Resources Board.* In affirming the trial court's action, we specifically note that Appellant's objection to the amount of water appropriated by the trial court was not preserved on appeal, and thus is not before us.

For the above stated reasons, both actions below are affirmed.

AFFIRMED.

2. Title 82 O.S.Supp.1972, § 105.1.

3. See Hutchins, Water Rights Laws in the Nineteen Western States, Vol. 1, p. 26; and *In re German Ditch & Res. Co.*, 56 Colo. 252, 256, 271, 139 P. 2 (1913). Also see Hutchins, Water Rights Laws in the Nineteen Western States,

LAVENDER, C. J., and WILLIAMS, HODGES, DOOLIN, HARGRAVE and OPALA, JJ., concur.

IRWIN, V. C. J., dissents.

Vol. 1, p. 21, at which Hutchins defines water course as follows:

"This group comprises, without subclassification, waters flowing in well-defined channels, and waters in lakes and ponds whether or not connected with stream systems."