Walter Dean HART, Jr., Appellant,

v.

Candace Landers BLALOCK, Appellee.

No. 86389.

Supreme Court of Oklahoma.

Feb. 4, 1997.

---

Robert A. Flagler, Flagler & Flagler, Norman, for Appellant.

Bill V. Wilkinson, Tulsa, for Appellee.

WATT, Justice.

This is an appeal from the order of the District Court of Garvin County, Oklahoma, Honorable Robert A. Layden trial judge, sustaining the demurrer of Appellee, Candace Landers Blalock to the evidence of Appellant,

Walter Dean Hart, Jr. in a libel and slander action.

## FACTS

Mr. Hart sued Ms. Blalock for libel and slander on November 4, 1994, four days before an election for district judge of Garvin, McClain, and Cleveland Counties, which was to be held on November 8. Mr. Hart, the incumbent, had been appointed to the office in January 1994, and in his first election was opposed by Ms. Blalock. Mr. Hart originally sued both Ms. Blalock and Lacy Joe Champion, alleging that Mr. Hart was "presently campaigning in an election to retain the office of district judge...." Mr. Hart dismissed his suit against Mrs. Champion with prejudice on the first day of trial, in August 1995, and she is not a party to this appeal. Ms. Blalock was elected district judge.

On Sunday, October 30, 1994, the *Pauls Valley Daily Democrat* newspaper ran an advertisement paid for by Mrs. Champion in which Mrs. Champion stated that, in 1977, Mr. Hart, in league with his father and law partner, W.D. Hart, Sr., bought land owned by Mrs. Champion in a mortgage foreclosure action. Mrs. Champion claimed that Mr. Hart, Jr. bought the land for far less than it was worth at a time when Mr. Hart, Sr. was holding the land in trust for Mr. Champion, and that the Harts failed to serve Mrs. Champion with a summons. Mrs. Champion said that the Harts told the foreclosure court that they did not know her whereabouts, although her mailing address and telephone number were in the Harts' file. Mrs. Champion also described a series of state and federal court suits she filed against the Harts, the ultimate result of which was the recovery from Mr. Hart, Jr. of the minerals, mineral income, and the value of the surface estate.

Mrs. Champion's advertisement loosed a spate of negative advertising over the next week in various newspapers and over various radio stations from Ms. Blalock, Mr. Hart, and Alan Agee, who was Mrs. Champion's lawyer. Ms. Blalock ran several newspaper ads and radio commercials in which she repeated Mrs. Champion's charges.

On November 1, Mr. Hart placed a newspaper ad headed "SLANDER—BLALOCK STYLE" in which he said "Dean Hart, Jr. unequivocally states that Champion's Ad is nothing but a vile lie, misstatement of truth, and complete distortion of fact." Mr. Hart also said in his ad that Alan Agee, Mrs. Champion's lawyer, was Ms. Blalock's "principal supporter and financial backer," and that a dismissal and favorable plea bargains had been made concerning concealed weapons and drug charges against Mr. Agee's son while Ms. Blalock was an assistant district attorney. Mr. Hart also said, "If Agee could have his own judge, then business as usual would continue for him at the courthouse." Mr. Hart added, "Judge Hart has continued to take the high road while Blalock travels the low and lower road."

Mr. Agee countered Mr. Hart's ad with a full-page ad of his own on November 3 in which he reproduced court and land records reflecting a $17,000.00 jury verdict against Mr. Hart in favor of Mrs. Champion and a deed from Mr. Hart, Sr. and Mr. Hart, Jr. conveying real property to Mrs. Champion. Mr. Agee's ad also said, "If your ad is what you consider to be the high road, it says a great deal about your judgment and character." Mr. Agee's ad then challenged Mr. Hart to join Mr. Agee and Mrs. Champion at a meeting at 4:30 p.m. the next day to answer questions from the media and the public concerning Mrs. Champion's ad.

The next day, November 4, Mr. Hart filed suit against Ms. Blalock and Mrs. Champion, but did not attend the meeting Mr. Agee had advertised. On November 7, the day before the election, Ms. Blalock placed a full page ad saying, among other things, "HART DUCKS WIDOW'S CHALLENGE," and "WHERE'S *NO–SHOW* HART?"

Mr. Hart admitted at trial that a $17,-000.00 verdict had been entered against him in Mrs. Champion's favor, and that he and his father had conveyed property to Mrs. Champion, all as alleged in Mr. Agee's ad, and repeated in Ms. Blalock's ads.

### ISSUE

Was there evidence in the record that would have supported a jury finding that Ms. Blalock published defamatory falsehoods with a reckless disregard for whether they were false? We hold that there was not sufficient evidence to send the issue to a jury and that the trial court correctly sustained Ms. Blalock's demurrer to Mr. Hart's evidence.

### DISCUSSION

*Defamation*

When so called "public figures," that is individuals in the public eye, such as political candidates, sue for libel or slander their rights to recover are severely limited. Before a public official, or one running for public office, may recover for defamation he must show: (1) The publication of a defamatory statement, (2) that was false, and (3) was made with "actual malice," that is with knowledge that it was false or was made with reckless disregard of whether or not it was false. *Miskovsky v. Oklahoma Publishing Co.*, 654 P.2d 587, 589–90 (Okla.1982), discussing *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In *New York Times*, the United States Supreme Court held that guaranteeing the public's interest in robust discussion of public affairs called for a rule in defamation cases that would require public officials to show that defamatory comments made about them were both false and made in reckless disregard of their falsity. Subsequently, in *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), the court amplified the definition of "reckless disregard" to include a requirement that the statement was made, although the publisher "entertained serious doubts" concerning its truthfulness. *Hodges v. Oklahoma Journal Publishing Company*, 617 P.2d 191, 194–95 (Okla.1980).

Mr. Hart concedes that he is a public figure and that the *New York Times* rule applies to this case. Mr. Hart contends that his published statement that Mrs. Champion's ad contained "lies" required Ms. Blalock not to republish Mrs. Champion's accusations because they were false. This is not the law, as the trial court found.

Ms. Blalock looked at the file of Alan Agee, Mrs. Champion's lawyer, and satisfied herself that Mrs. Champion's statements were substantially true. Ms. Blalock testified at trial that she continued to believe Mrs. Champion. Mr. Hart's non-specific denial of Mrs. Champion's charges was not evidence of Ms. Blalock's actual knowledge of the falsity of Mrs. Champion's charges. In *Howell v. Hecht,* 821 S.W.2d 627 (Tex.App.1991), the Court of Appeals of Texas held that, in a defamation action by a defeated candidate for the Texas Supreme Court, the plaintiff's failure to state facts that would specifically inform his opponent that the statements the opponent was making about the plaintiff were false defeated the plaintiffs suit. We agree with the Texas court's analysis on this score.

Several of Mrs. Champion's charges were true. Others were exaggerated or untrue. The trial court observed, accurately in our estimation, that Mrs. Champion's charges were confusing. Mr. Hart, Ms. Blalock, Mr. Agee, and Mrs. Champion all placed political spin on the facts of the controversy so that the ads of the parties were filled with half-truths and self-serving statements. For example, Mr. Hart did everything in his power to paint Ms. Blalock, Mr. Agee, and Mrs. Champion as having published nothing but "lies," while Ms. Blalock and Mr. Agee strove with equal fervor to paint Mr. Hart as a fraudfeasor. Nevertheless, absent proof of actual knowledge of the falsity of Mrs. Champion's accusations, Ms. Blalock's republication of those accusations was not actionable. *Jurkowski v. Crawley,* 637 P.2d 56 (Okla. 1981). The trial court correctly sustained Ms. Blalock's demurrer to the evidence.

*The Obligations of Lawyers and Judges in Campaigns for Judicial Office*

Mr. Hart moved that this Court retain this appeal, rather than assigning it to the Court of Civil Appeals, because it is a matter of substantial public interest, and presents an opportunity for this Court to establish guidelines concerning appropriate conduct in judicial elections. We agree with Mr. Hart that this appeal presents a matter of substantial public interest, and for that reason we re-tained jurisdiction. We disagree, however that there is any need for this Court to use this appeal to establish guidelines for the conduct of lawyers and judges in judicial elections because the statutes and this Court's rules already provide such guidelines.

Title 5 O.S.1991 § 13 provides:

The Supreme Court of the State of Oklahoma shall have the exclusive power and authority to discipline attorneys and counselors at law or revoke the permit to practice law granted to attorneys and counselors at law and the rules of conduct of attorneys and counselors at law in this state shall be such as are now or may hereafter be prescribed by the statutes of Oklahoma and the rules of the Supreme Court.

Rule 8.2 of the Rules of Professional Conduct, Title 5, Ch. 1, App. 3–A, provides as follows:

(a) A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

(b) A lawyer who is a candidate for judicial office shall comply with the applicable provisions of the Code of Judicial Conduct.

Canon 7.B of the Code of Judicial Conduct referred to in Rule 8.2 states in material part:

(1) A candidate, including an incumbent judge, for a judicial office that is filled either by public election between competing candidates or on the basis of a merit system election:

(a) should maintain the dignity appropriate to judicial office....

(b) ... except as authorized under subsection B(2) or B(3) he should not allow any other person to do for him what he is prohibited from doing under this Cannon;

(c) should not ... misrepresent his identity, qualifications, present position, or other fact.

...

Rule 1.6 of the Rules Governing Disciplinary Proceedings, Title 5, Ch. 1, App. 1–A, provides as follows:

> This Court has adopted the Code of Judicial Conduct as modified by this Court, as a proper guide and reminder for judges and announced candidates for judicial office, and as indicating what the people have a right to expect from them. Complaints against any judge for violating any of the Canons of such Code shall be referred directly to the Chief Justice of this Court for such action as the Court may consider appropriate. Complaints against a judge for misconduct unrelated to the performance of his judicial duties may be referred to the Professional Responsibility Commission for investigation and disciplinary proceedings as herein provided for other lawyers.

The foregoing statute and Rules require lawyers who are involved in campaigns for judicial office, whether as candidates, incumbents, or supporters, to be scrupulously honest in what they say about candidates. They must conduct themselves in a way that "maintains the dignity appropriate to judicial office." This Court has the exclusive power and authority to discipline lawyers. This appeal, however, is not an appropriate forum to pass on the conduct of the lawyers and judge involved in this judicial campaign.

DISTRICT COURT'S ORDER SUSTAINING DEMURRER TO THE EVIDENCE AFFIRMED.

KAUGER, C.J., and HODGES, LAVENDER, SIMMS and HARGRAVE , JJ., concur.

OPALA, J., concurs in judgment.