1999 OK 90

**Honorable David HERBERT,**
**Plaintiff/Appellant,**

v.

**OKLAHOMA CHRISTIAN COALITION,**
Defendant/Appellee.

No. 93,062.

Supreme Court of Oklahoma.

Nov. 9, 1999.

As Corrected Feb. 3, 2000.

Barry K. Roberts, Norman, Oklahoma and Donald L. Easter, Oklahoma City, Oklahoma, For Plaintiff/Appellant.

Brently C. Olsson, Huckaby, Gleming, Frailey, Chaffin, Cordell, Greenwood & Perryman, L.L.P., Oklahoma City, Oklahoma and Deborah E. Fortune, Oklahoma City, Oklahoma, For Defendant/Appellee.

HARGRAVE, V.C.J.

¶1 A few days before the 1998 general election, the Oklahoma Christian Coalition published and distributed a "Voter Guide." The Voter Guide stated that the recorded positions of candidates were verified using voting records, public statements and survey responses. The Voter Guide stated that it was for educational purposes only and was not to be construed as an endorsement of any candidate or political party. The guide stated that it was authorized by the Oklahoma Christian Coalition ("OCC") and that the OCC is a nonprofit 501(c)(4) pro-family, citizen action organization. Ken Wood, an employee of OCC, prepared the Voter Guide.

¶2 The record before us contains a photocopy of only that part of the Voter Guide covering state Senate races in Districts 22, 42, 44 and 46. For each district, a chart with six issues listed in the center and one candidate's name on each side, is presented. For each listed issue, the candidates' positions are shown as: "supports," "opposes" or "unclear." The Voter Guide stated that plaintiff "supports": "decriminalize sodomy and bestiality;" "abortion on demand;" "taxpayer funding of abortion clinics" and "minors' access to pornography in libraries." Plaintiff sought a retraction, which defendant refused. Plaintiff was reelected to his Senate seat by the largest margin of his career.

¶3 Plaintiff sued for defamation, alleging that the "statements of fact" relating to him were false and defamatory. Plaintiff pled that he expended time and money in his reelection campaign and that the defendant's statements were maliciously calculated to and did adversely affect plaintiff's campaign efforts, causing plaintiff to incur damages in the form of time and money expended, and caused plaintiff to incur damages in the form of personal monetary expenditures to ameliorate the adverse effect of the libelous statements. Plaintiff sought damages in excess of $10,000, for general, special and exemplary damages, plus attorney fees.

¶4 Plaintiff alleges that the Voter Guide is false because it claims to be based on voting

records, public statements and survey positions, when in fact as to Senator Herbert, only certain votes on certain issues were used. Plaintiff was not personally contacted for his views nor did he complete a survey. Plaintiff alleges that defendant intentionally lied or showed a reckless disregard for the truthfulness of its material. Plaintiff claims that the words chosen had the natural and probable effect of casting him as "an abortionist who approves of sinful and outrageous conduct, with no concern for protection of children from pornography," and that his "honesty, integrity, morality and reputation as a public official, businessman and private person" have been injured and called into question.

¶ 5 Defendant moved for summary judgment based on its affirmative defenses: 1) that its Voter Guide is political speech, protected under the First Amendment and under Article 2, § 22 of the Oklahoma Constitution,[1] and that it incited no lawless action, citing *Gaylord v. Thompson*, 1998 OK 30, 958 P.2d 128; 2) that its Voter Guide constitutes opinion and personal judgment upon plaintiff's voting record that is privileged under 12 O.S. § 1443.1 (third) as a "fair and true report of any legislative or judicial or other proceeding authorized by law ... and any and all expressions of opinion in regard thereto, and criticism thereon, and any and all criticism upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticized;" 3) that the information contained in the Voter Guide was neither false nor defamatory; and 4) that the plaintiff cannot show actual malice on the part of defendant.

¶ 6 Ken Wood, who prepared the Voter Guide, testified by deposition that the factual basis used for determining an incumbent candidate's position was his voting record. Wood researched House and Senate journals for votes on legislation that was considered important to the OCC and its members. Ken Wood reviewed the senator's votes on those particular issues and formed the opinion that the senator supported each of the issues as stated in the Voter Guide. Wood testified that he also relied upon newsletters and publications from other organizations, including the pro-life group, Oklahomans for Life.

¶ 7 The Defendant listed the following votes made by Senator Herbert as the factual basis for its Voter Guide statements:

Abortion issues:

— On April 16, 1990, Plaintiff voted to table a parental notification amendment to House Bill 1754.

— Plaintiff voted on May 13, 1990 against an amendment that would have excluded abortion services or abortion counseling from neonatal services included in HB 1620.

— Senate Bill 4042—plaintiff voted May 18, 1994 to adopt a conference committee report that would have advanced a bill that repealed any criminal punishment for performing abortions and which excluded unborn fetuses from the definition of "human being" in the criminal homicide section. Defendant felt that adoption of a conference committee report meant that the bill could not be amended.

— Plaintiff voted April 15, 1998 for House Bill 2360, which would have required that "Title X family planning providers" be a mandatory part of health care providers under the Oklahoma Medicare system. Title X family planning providers may give abortion counseling and referrals.

Decriminalization of Sodomy/Bestiality

— Senate Bill 404. Plaintiff voted to adopt the conference committee report of a bill that amended the sodomy and

---

1. Article 2, § 22, Oklahoma Constitution provides:

"Every person may freely speak, write or publish his sentiments on all subjects, being responsible for the abuse of that right and no law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions for libel, the truth of the matter alleged to be libelous may be given in evidence to the jury and if it shall appear to the jury that the matter charged as libelous be true, and was written or published with good motives and for justifiable ends, the party shall be acquitted." .

bestiality statute. (See footnote [2]) Ken Wood believed that this vote ensured advancement of the bill without amendment.

Access to Pornography in Libraries:

— On May 27, 1997, plaintiff voted against Senator Carol Martin's proposed amendment to restrict minors' access to sexually explicit material in libraries.

¶ 8 Senator Herbert voted against final passage of Senate Bill 404 and informed Ken Wood of this after seeing the Voter Guide. Wood testified that he still believed that Senator Herbert had, by his vote to advance the conference committee report without the possibility of amendment, voted to support the decriminalization of bestiality and sodomy. Ken Wood considered any vote to forward SB 404 as a vote that the decriminalization of consensual homosexual sodomy and bestiality could not be corrected through amendment. Defendant stated that he believed that plaintiff's vote accepting the conference committee report meant that omissions in failing to protect unborn fetuses could not be remedied. It was Wood's belief that plaintiff's ultimate vote against the bill was an attempt to "cover" for his earlier involvement in forwarding Senate Bill 404 by voting to adopt the conference committee report. Senator Herbert acknowledged that he may have given the impression at the conference committee hearings that he planned to vote for the bill.[3] As to Senator Carol Martin's amendment restricting minor's access to library materials, Wood did not have a recorded vote, but was informed by Senator Martin that Senator Herbert had voted against her amendment. Wood obtained an affidavit from Senator Martin to that effect. Defendant argues that plaintiff cannot demonstrate actual malice on Ken Wood's part because Wood believed in the truth of the statements based on his review of Senator Herbert's votes. Thus, Defendant argues, summary judgment was appropriate.

¶ 9 Plaintiff moved for partial summary judgment, asking the court to find that he had met his burden of proving malice with a sufficient quantity of evidentiary material to allow a finder of fact to find actual malice by clear and convincing evidence. In support of the motion, and in response to defendant's motion for summary judgment, Plaintiff argues that the privilege to criticize an election candidate does not extend to criticism based upon false allegations of fact or dissemination of false accusations, and that where the statements could be understood by the average reader to be either non-actionable expressions of opinion or statement of facts, the issue may not be resolved by summary judgment.

¶ 10 Plaintiff argues that the "unstated factual basis" for defendant's statements are false because 1) plaintiff did not cast a vote on any bill or amendment to any bill that would have legalized or repealed abortion on demand as set forth in *Roe v. Wade;* 2) plaintiff did not cast a vote on any bill that decriminalized sodomy because Senate Bill 404 codified sodomy as a felony; 3) plaintiff voted in favor of Section 303 of Senate Bill 404, which makes it a felony for anyone, including librarians or libraries, to make sexually explicit material available to a child. Therefore, plaintiff argues that he voted in favor of restricting minors' access to pornography; 4) defendant has failed to produce a verified vote cast by him to fund abortion clinics with taxpayer money. He argues that there were no express statements of opinion anywhere in the Voter Guide and, because each statement is short, succinct, focused and objective, the defendant intended to present the information as statements of fact. Even if the statements are deemed opinion, plaintiff argues that defendant would be liable because an opinion derived from unstated or assumed facts causes the reader to assume that the publisher is asserting facts to sup-

**2.** Senate Bill 404 was a massive bill that would have recodified Oklahoma's Criminal Code. It repealed 21 O.S. § 861 which made procuring an abortion punishable by imprisonment, and 21 O.S. § 886, which made sodomy with man or beast punishable by imprisonment for a term not greater than 10 years. The new § 886 makes sodomy committed with mankind or beast a felo-

ny. SB 404 also defined "human being," in the criminal homicide definitions, as "a person who has been born and is alive."

**3.** Deposition of David Herbert dated January 12, 1999, page 106.

port the opinion. This, he argues, is the same as if the unstated facts were specified, and the publisher risks liability if they are defamatory.

¶ 11 In support of actual malice, plaintiff submits that the Voter Guide falsely states that the recorded positions of candidates were verified using voting records, public statements and survey responses, when in his case they did not, and that, furthermore, the Voter Guide was published and distributed in the very last days of the campaign. Plaintiff submits the following as uncontroverted evidentiary material sufficient to prove actual malice:

1. Ken Wood is a professional in the area of politics, receiving formal training in lobbying and following and tracking legislation.

2. Ken Wood did not research plaintiff's voting record. Rather, Wood examined only certain bills and certain votes on those bills.

3. Ken Wood had no Senate record of any vote cast by plaintiff in any committee meeting.

4. Ken Wood was not present at any Senate committee meeting where plaintiff cast a vote.

5. Ken Wood researched votes cast by plaintiff only on issues selected by him and which he deemed important to the Oklahoma Christian Coalition by reading House and Senate journals, reviewing actual bills and relying on reports of other pro-life organizations.

6. No one from OCC ever asked plaintiff whether he supported or opposed any of the listed issues.

7. Plaintiff was never given an opportunity to respond to the survey circulated by OCC.

8. The survey did not ask whether the responding party supported or opposed abortion on demand, decriminalization of bestiality or sodomy, minor's access to pornography or taxpayer funding of abortion clinics.

9. Ken Wood admitted that plaintiff never voted on any bill or amendment to any bill that contained the terms abortion on demand or abortion clinics.

10. Senate Bill 404 did not decriminalize sodomy.

¶ 12 The trial court denied plaintiff's motion for summary judgment and granted summary judgment in favor of the defendant. This Court retained the appeal for disposition based upon the summary record below. The plaintiff's motion for further briefing is denied.

¶ 13 Even if we assume that the statements in the Voter Guide are capable of a defamatory meaning,[4] plaintiff's evidentiary material in support of malice fails to rise to the "actual malice" standard of *New York Times Co. v. Sullivan, infra.*[5] Because plaintiff has not shown clear and convincing evidentiary material of actual malice, we find that the trial court correctly granted summary judgment to defendant.

¶ 14 We would begin by pointing out that the statements in the Voter Guide about plaintiff cannot be proven "true" or "false" because they are defendant's opinions or conclusions based upon its review of plaintiff's votes on certain issues and on materials from other organizations.

¶ 15 If a statement of opinion on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20, 110 S.Ct. at 2695. 2706–7, 111 L.Ed.2d 1, 19 (1990). Defendant's statements in the case at bar cannot reasonably be interpreted as

---

4. A communication is defamatory if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Tatur v. Solsrud,* 174 Wis.2d 735, 498 N.W.2d 232, 233–34 (1993), citing Restatement (Second) Torts, § 559 (1977).

5. In *Washington v. World Pub. Co.,* 506 P.2d 913 (Okla.1972) we began with the assumption that the article was libelous per se and false, but found the record lacking proof of actual malice.

stating actual facts about an individual. *See, Milkovich,* 497 U.S. at 20, 110 S.Ct. at 2706, 111 L.Ed.2d at 18. The statements are in the nature of a non-actionable "judgmental statement" which is opinionative and not factual in nature. *Price v. Walters,* 1996 OK 63, 918 P.2d 1370.

¶ 16 The United States Supreme Court, in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), placed a formidable burden on a public figure plaintiff seeking to recover for defamation. *New York Times* requires that a public figure suing for defamation must prove by clear and convincing evidence that the allegedly false defamatory publication was made with "actual malice." The Court stated:

> "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with actual malice—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co.,* 376 U.S. at 279–80, 84 S.Ct. at 726.

This Court reiterated the *New York Times* standard in *Hart v. Blalock,* 1997 OK 8 & 9, 932 P.2d 1124, 1126 (Okla.1997) and stated that absent proof of actual knowledge of the falsity of a third party's accusations, Blalock's republication of those accusations was not actionable.

¶ 17 It is undisputed that the plaintiff in the case at bar is a public figure. Accordingly, the *New York Times v. Sullivan* "actual malice" standard applies. Therefore, plaintiff had the burden of presenting sufficient evidentiary material from which a trier of fact could find or infer, by applying the clear and convincing evidence test, that the defendant was aware that its statements were false, or that it published them with reckless disregard of whether they were false. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

¶ 18 The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law for the reviewing court. *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 510–511, 104 S.Ct. 1949, 1965, 80 L.Ed.2d 502 (1984). It has been said that judges, as expositors of the Constitution, have a duty to independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of actual malice. *Id.* As to summary judgment, the United States Supreme Court has held that a court ruling on a motion for summary judgment must be guided by the New York Times "clear and convincing" evidentiary standard in determining whether a genuine issue of actual malice exists—that is, whether the evidence presented is such that a reasonable jury might find that actual malice had been shown with convincing clarity. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986).

¶ 19 The "actual malice" standard to be met by the public figure plaintiff is a formidable one.[6] This Court has said that when public figures such as political candidates sue for libel or slander, their rights to recover are severely limited. *Hart v. Blalock,* 932 P.2d 1124, 1126 (Okla.1997). "Actual malice" requires, for example, "false statements made with [a] high degree of awareness of their probable falsity." *Garrison v. State of Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964). Failure to conduct a thorough investigation is not a sufficient basis to establish actual malice. *Jurkowski v. Crawley,* 637 P.2d 56, 61 (Okla. 1981). Negligence is not enough to rise to the level of "actual malice," and malice may not be inferred simply from a showing that the publication was untrue.

¶ 20 It is not enough to show that the publisher acted negligently. *Garrison,* 379 U.S. at 79, 85 S.Ct. at 218; *New York Times Co.,* 376 U.S. at 288, 84 S.Ct. at 730

---

**6.** See Martin B. Louis, *Summary Judgment and the Actual Malice Controversy in Constitutional Defamation Cases,* 57 S. Cal. L.Rev. 707, 711 n.29 (1984) (noting that three-fourths of defendants' summary judgment motions on the actual malice issue are granted).

That the publisher acted out of ill will, hatred or a desire to injure the official is not enough to establish actual malice. *Greenbelt Cooperative Publishing Ass'n. v. Bresler*, 398 U.S. 6, 10–11, 90 S.Ct. 1537, 1540, 26 L.Ed.2d 6 (1970); *See also, Garrison v. State of Louisiana*, 379 U.S. at 73–74, 85 S.Ct. at 215. That the publisher acted in reliance on the unverified statement of a third party, without having personal knowledge of the subject matter of the defamatory statement is not enough. *See, St. Amant v. Thompson*, 390 U.S. 727, 730–1, 88 S.Ct. 1323, 1325–26, 20 L.Ed.2d 262 (1968).

¶ 21 The fact that the publisher failed to undertake an investigation that would have been made by a reasonably prudent person is not enough. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332, 94 S.Ct. 2997, 3003, 41 L.Ed.2d 789 (1974); *St. Amant v. Thompson*, 390 U.S. at 731, 88 S.Ct. at 1325; *New York Times Co.*, 376 U.S. at 287–88, 84 S.Ct. at 730. Likewise, malice is not established where there is evidence to show that the publisher acted on a reasonable belief that the defamatory material was substantially correct and there was no evidence to impeach the publisher's good faith. *New York Times Co.*, 376 U.S. at 286, 84 S.Ct. at 729.

¶ 22 Actual malice cannot be established merely by showing that the publication was erroneous, derogatory or untrue. *Capital-Gazette Newspapers, Inc. v. Stack*, 293 Md. 528, 445 A.2d 1038, 1044 (1982), *cert. den.* 459 U.S. 989, 103 S.Ct. 344, 74 L.Ed.2d 384 (1982), citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340–41, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974), *St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968); *New York Times Co. v. Sullivan*, 376 U.S. at 281, 84 S.Ct. at 726. *See also, St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968); *New York Times Co.*, 376 U.S. at 281, 84 S.Ct. at 726. In *St. Amant*, 390 U.S. at 731, 88 S.Ct. at 1325, the Supreme Court stated that publishing with "serious doubts as to the truth of [the] publication . . . shows reckless disregard for truth or falsity and demonstrates actual malice." In *Herbert v. Lando*, 441 U.S. 153, 160, 99 S.Ct. 1635, 1640, 60 L.Ed.2d 115 (1979), the Supreme Court emphasized that actual malice requires examination of "the conduct and state of mind" of the publisher and a showing that the publisher knew or had reason to suspect that his publication was false.

¶ 23 If we pare down plaintiff's allegations in support of actual malice in the case at bar, they are that the defendant: misrepresented his voting record, failed to thoroughly research his votes, drew incorrect conclusions from its research, failed to contact him personally to obtain his position on the issues before the survey was published and failed to identify that plaintiff's positions were not based upon surveys. The above United States Supreme court cases reflect that the points argued by plaintiff in support of actual malice are insufficient to rise to the level of "actual malice" by the *New York Times Co.* standard; they amount to, at most, negligence on defendant's part.

¶ 24 Ken Wood testified that he relied upon House and Senate Journals and other publications. Attached to defendant's motion for summary judgment is the August, 1990 *"Oklahomans for Life"* newsletter that, in an article on the parental notification amendment, informed its readers that a "nay" vote on the procedural motion indicated a pro-abortion vote and was "very important as an indicator of the priorities, and the actual views on the abortion issues of many senators." (emphasis in original) Another article noted that a vote on Senator Kay Dudley's amendment to a prenatal care bill was indicative of a pro-abortion stance of those who voted "aye" on the procedural motion. According to their reports, Senator Herbert's votes reflected a "pro-abortion" stance.

¶ 25 Also attached to defendant's motion for summary judgment is the *Oklahoma Legislative Reporter* dated May 18, 1994, which contained a report on Senate Bill 404, the recodification of Oklahoma's criminal code. The *Reporter* quoted Senator Jerry Pierce, in opposition to the bill, as saying that the measure "contains language legalizing homosexuality; legalizing bestiality so long as the beast suffers no pain; removing all legal protection of unborn children and weakening the so-called 'Make My Day' law." Defen-

dant has shown that Ken Wood relied on various sources in reaching his conclusions about plaintiff's voting record.

¶ 26 Some state courts, in deciding defamation cases charging misrepresentation of a public official's votes or political views, have held either that such information was not defamatory, or that the public official failed to establish actual malice on the defendant's part. In *Fong v. Merena*, 66 Haw. 72, 655 P.2d 875 (1982), defendant posted numerous signs around town that gave the impression that incumbent state representative Fong had voted for a controversial pension bill which had suffered considerable public opposition.[7] Fong sued Merena for libel, alleging that Merena knew that he did not vote for the pension bill and the implication that he did was false and misleading and injured his reputation for honesty and integrity and was, therefore, defamatory. The trial court denied Merena's motion for summary judgment and Fong recovered damages.

¶ 27 The Hawaii Supreme Court reversed, finding that although the publication was reasonably susceptible of a defamatory interpretation, the evidence did not rise to the level of clear and convincing proof required to establish the element of actual malice in a defamation action brought by a public official; that is, it had not been clearly and convincingly shown that in making the publication, Merena believed that it was false. The mere defamatory character of the publication did not suffice to prove actual malice, nor did mere failure to investigate further.

¶ 28 In a case involving a brochure circulated against a state senator stating that he had voted to legalize homosexuality and marijuana, and implying that he favored "pot" and "gays," the Kansas Supreme Court found the report to be substantially true and therefore could not form the basis of a libel action. *Hein v. Lacy*, 228 Kan. 249, 616 P.2d 277 (1980). The state chairman of the American party circulated a brochure which stated that a Kansas state senator, a candidate for the Republican nomination for a congressional seat, had voted for decriminalization of marijuana and legalization of homosexuality.

The record reflected that the senator had voted in favor of Senate Bill 310, which would have repealed sections of the Kansas Criminal Code prohibiting sodomy between consenting adults, adultery and unlawful cohabitation. Although the purpose of the bill was to outlaw massage parlors, the legislation would have removed the prohibition against copulation between consenting adults of the same sex. The bill would have redefined and broadened the crime of sodomy for hire, and would have defined bestiality as coitus with an animal, and made it a crime. The Kansas Supreme Court found that the statement was substantially true because, in voting for SB 310, it was literally true that plaintiff voted to legalize homosexuality; therefore, defendant's statement was not actionable.

¶ 29 The "legalization of marijuana" charge in the Kansas case arose from a senate committee's consideration of House Bill 2313, which contained a proposed amendment to the Uniform Controlled Substances Act which would have reduced the penalty for possession of one ounce or less of marijuana. If enacted by the legislature, the bill would have reduced the penalty for possession of one ounce or less of marijuana to an unclassified misdemeanor punishable by a fine of not more than $100 for a first offense. The minutes of the senate federal and state affairs committee reflected that Senator Hein seconded the motion of another senator to recommend HB 2313 as favorable for passage. The motion failed and the bill ultimately was reported to the senate without recommendation. Senator Hein moved that the bill be referred back to the senate committee after another senator moved that the bill be stricken from the calendar. On the same day, a roll call was taken whether to reconsider the senate action on HB 2313. Senator Hein voted for reconsideration of the bill, but the motion failed and the bill was not adopted. The Kansas Supreme Court found that the statement was substantially true because the senator's votes and actions showed that he favored adoption of HB 2313 and that the bill could be deemed as "decrim-

7. The signs said:
"USHIJIMA/FONG

VOTED "YES"
PENSION/PAY RAISE"

inalizing" marijuana. Therefore, a cause of action in defamation could not be based upon defendant's statements contained in the brochure referring to Senator Hein's "views" and "position" on the subject.

¶ 30 Lastly, plaintiff argued that even if the literal meaning of the brochure was not libelous, the statements that he favored "pot" and "gays" was false and therefore actionable in libel. The Court held that the clear import of the letter was that the plaintiff had voted for legislation that would have legalized homosexual intercourse and which would have reduced the criminal penalties for marijuana offenses. Any statement or inference that plaintiff's voting record indicated a preference for, or favor of "pot and gays" would fall within the ambit of reasonable comment on official conduct.

¶ 31 The Kansas Supreme Court affirmed the trial court's summary judgment for defendant, finding that the statements made by defendant in the brochure essentially involved the voting record and views of the plaintiff in his capacity as a Kansas state senator. The court said that, taken as a whole, it did not interpret the brochure as an attack on the personal integrity or character of the plaintiff: it attacked only his views and voting record in areas where there was wide public controversy and difference of opinion. 616 P.2d at 284. The court noted that, although the whole truth was not stated, it seldom is in political campaigns. Id. at 286.

¶ 32 In another "vote misrepresentation" case, the Wisconsin Supreme Court held that alleged misrepresentations of candidates' voting records on expenditures and taxes were not defamatory because they were not capable of lowering candidates' reputations in the community or of deterring third persons from associating or dealing with them. *Tatur v. Solsrud,* 174 Wis.2d 735, 498 N.W.2d 232 (1993). For a pre-*Sullivan* case, *see Corman v. Blanchard,* 211 Cal.App.2d 126, 27 Cal.Rptr. 327 (2nd Dist.1962).

¶ 33 As to failure to investigate, in *Beilenson v. Superior Court,* 44 Cal.App.4th 944, 52 Cal.Rptr.2d 357 (2nd Dist.1996), it was argued that defendant Beilenson failed to conduct extensive enough research or investigation to discover that his allegations, made in a mailed brochure, that Sybert violated the Fair Political Practices Commission laws by maintaining his private law practice while on the public payroll, were false because Sybert was not in violation of any law. The brochure also alleged that certain of Sybert's clients had a vested interest in the actions of state government while Sybert was a member of the Office of Planning and Research, and that this was a serious conflict of interest and breach of public trust.

¶ 34 The California Court of Appeal analyzed the brochure as proclaiming it wrong for a state official to have an outside job, implying that all of the official's time, attention, and energies ought to be devoted to his public post, and that such conduct, in the opinion of Beilenson, was a "rip-off." The court stated that "this colorful epithet, when taken in context with the other information contained in the mailer, was rhetorical hyperbole that is common in political debate, and as such, the term "rip-off" was not defamatory." *Id.* at 951–52, 52 Cal.Rptr.2d 357. The court said that Sybert's practice of law and his receipt of substantial fees from a certain class of clients while employed as a state official did not violate the law, but that, nonetheless, a citizen could possess the belief that such a custom violates a higher code of ethical precepts. The court found that Beilenson's accusations were statements of opinion entitled to the protection of the First Amendment. Further, even if the statements were deemed to be untruthful and not statements of opinion, Sybert was required to establish by clear and convincing evidence that Beilenson was aware of the probable falsity of the statements and willfully directed the publication of the libel, which he failed to show.

¶ 35 In *New York Times* public official defamation cases, the focus of inquiry is not on the defendant's attitude toward the plaintiff, but rather on the defendant's attitude toward the truth or falsity of the statement alleged to be defamatory. *Varanese v. Gall,* 35 Ohio St.3d 78, 518 N.E.2d 1177, 1180 (1988). Evidence of hatred, spite, vengefulness, or deliberate intention to harm can never, standing alone, warrant a verdict for the plaintiff in such cases. *Id.* The *Gall* court went on to state that a defendant who

was motivated to publish by the "blackest spirit of hatred and spite" will not be liable if he subjectively believed in the truth of the statement, citing Smolla, *Law of Defamation* 3–38, § 3.15 (1986). Reckless disregard may be established by clear and convincing evidence that the defendant proceeded to publication despite a high degree of awareness of probable falsity, or that the defendant in fact entertained serious doubts as to the truth of his publication. *Id. See also, Jurkowski v. Crawley,* 637 P.2d at 61.

¶ 36 Ken Wood testified in his deposition that he did not act out of ill will, hatred or malice. While this kind of self-serving statement would not be enough on its own, Wood has shown that he undertook an investigation of certain pieces of legislation and relied on information provided by other organizations and by Senator Carol Martin. The evidentiary material supports Wood's statements that he acted on the belief that the statements in the Voter Guide were substantially correct. The plaintiff has alleged that the defendant misrepresented his voting record and stand on certain issues. The defendant has shown votes cast by the plaintiff and reports by other organizations from which he concluded that the plaintiff supported those measures or issues. It is defendant's conclusions from reviewing that information that are alleged to be "false". The inference is that, under the circumstances, the allegedly false defamatory statements were at most "rhetorical hyperbole often present in vehement debate," or the kind of "misstatements and misrepresentations ordinarily associated with the political milieu." *See, Greenbelt Cooperative Publishing Ass'n. v. Bresler,* 398 U.S. 6, 90 S.Ct. 1537, 1540, 26 L.Ed.2d 6 (1970); *New York Times Co. v. Sullivan,* 376 U.S. at 270, 273 n. 13, 84 S.Ct. at 721, 722 n. 13. *See also, Price v. Walters,* 918 P.2d at 1378 ("Those statements fall exclusively within the category of 'rhetorical hyperbole:' they are privileged under 12 O.S. 1991 § 1443.1, and protected under the constitution").

¶ 37 The issue of actual malice is for the trier of fact only after a determination that plaintiff has presented evidentiary material upon which a jury might find that actual malice has been shown with convincing clarity. Plaintiff in the case at bar has failed to surmount that evidentiary obstacle. Thus, plaintiff failed to establish "actual malice" on the part of the defendant.

¶ 38 We do not mean to suggest that the contents of a Voter's Guide never could be defamatory or capable of a defamatory meaning, or that a plaintiff never would be able to establish that the publisher acted with actual malice. Deliberate lies or "calculated falsehoods" are not protected by the First Amendment. *See, Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979).

**SUMMARY JUDGMENT AFFIRMED.**

¶ 39 CONCUR: SUMMERS, C.J., HARGRAVE, V.C.J., HODGES, LAVENDER, and KAUGER, JJ.

¶ 40 CONCURS IN JUDGMENT: BOUDREAU, J.

¶ 41 DISSENTS: WATT, J.

¶ 42 DISQUALIFIED: OPALA, J.

