2004 OK CIV APP 44
**Brian C. WILSON, Plaintiff/Appellant,**

v.

**CITY OF TULSA, and Chief of Police Ron Palmer, Defendants/Appellees,**

and

**Bryant Lamont Harris, Defendant.**
**No. 99,443.**

Court of Civil Appeals of Oklahoma,
Division No. 2.

April 27, 2004.

Loren Gibson, Gibson & Associates, Oklahoma City, OK, for Plaintiff/Appellant.

Ellen Hinchee, Tulsa, OK, for Defendants/Appellees.

Opinion by TOM COLBERT, Chief Judge.

¶1 Brian C. Wilson appeals from a summary judgment granted in favor of the City of Tulsa (City), and Ron Palmer, City's former Chief of Police (Chief). The issue on appeal is whether the trial court erred in determining that there was no issue as to any material fact and that City and Chief were entitled to judgment as a matter of law. Upon review of the summary judgment record and applicable law, we conclude that the trial court did not err and affirm its judgment.

## FACTS AND PROCEDURAL BACKGROUND

¶2 On November 28, 1999, Wilson, a police officer employed by City, arrested Bryant Lamont Harris. Harris later complained that Wilson stole $300 from him during the course of the arrest, and the police department conducted an internal investigation. On February 3, 2000, upon reviewing the resulting report and file, Chief terminated Wilson. The police department issued a press release stating the official reasons for Wilson's termination.

¶3 Wilson, a member of the Fraternal Order of Police (FOP), filed a grievance to appeal his termination under the terms of the collective bargaining agreement between FOP and City. His grievance was prosecuted in arbitration by FOP. The arbitrator concluded Wilson's termination violated the contract and he was reinstated.

¶4 On February 3, 2001, Wilson filed a tort claim notice with City. On October 30, 2001, he filed this action against City and Chief. City and Chief filed motions for summary judgment. Following a hearing, the trial judge granted both motions. Wilson appeals.

## STANDARD OF REVIEW

¶5· "Summary judgment is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Davis v. Leitner,* 1989 OK 146, ¶9, 782 P.2d 924, 926. Although a trial court considers factual matters when deciding whether summary judgment is appropriate, its ultimate decision is purely legal: "whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." *Carmichael v. Beller,* 1996 OK 48, ¶2, 914 P.2d 1051, 1053. Therefore, our standard of review on appeal is de novo. *Id.*

## DISCUSSION

¶6 Wilson asserts he was actually terminated for refusing to sign a liability waiver before taking a polygraph examination from an examiner chosen by City. In support of this assertion, he submitted deposition testimony from a retired police officer who stated that Chief admitted he fired Wilson for refusing to take the polygraph examination. Termination for that reason would have been in violation of a newly-adopted policy negotiated between FOP and City and effective January 21, 2000, roughly two weeks before Wilson's termination. The new policy became part of the contract between FOP and the police department.

¶7 Wilson contends there is a fact issue as to whether he was terminated for refusing to submit to a polygraph examination. Assuming he was, Wilson asserts that (1) his termination was wrongful and in violation of Oklahoma's public policy of free speech; (2) his termination constituted a separate violation of his constitutional free speech rights; and (3) the press release implying he was fired

for theft and lying was defamatory. Wilson further asserts that Chief exceeded the scope of his employment and is, therefore, personally liable for defamation and wrongful interference with Wilson's employment contract.

## I

¶ 8 We must first consider the extent to which Wilson is precluded from relitigating the issues raised in this lawsuit because of the arbitration of his grievance. The availability of the doctrine of issue preclusion presents a question of law to be reviewed *de novo*. *Cities Serv. Co. v. Gulf Oil Corp.*, 1999 OK 14, ¶ 12, 980 P.2d 116, 124. Whether it applies under the facts presented here calls for an exercise of the trial court's discretion, which we review for abuse of that discretion. *Id.*

¶ 9 In *Nealis v. Baird*, 1999 OK 98, ¶ 51, 996 P.2d 438, 458, the Supreme Court offered the following analysis:

Issue preclusion prevents relitigation of facts and issues *actually litigated* and *necessarily determined* in an earlier proceeding between the same parties or their privies. An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined.... An issue is necessarily determined if the judgment would not have been rendered but for the determination of that issue. Additionally, the party against whom issue preclusion is interposed must have had a "full and fair opportunity" to litigate the critical issue in the earlier case.

(Footnotes omitted.) An arbitration award can be the basis for the application of issue preclusion if the other criteria are in place. *Cities Serv.*, 1999 OK 14, ¶¶ 16–17, 980 P.2d at 125–26.[1]

¶ 10 The arbitrator concluded that Wilson's termination violated the contract between FOP and City, because the evidence was insufficient to establish that Wilson stole the money. He also concluded, however, that City did not willfully or intentionally violate the contract and denied FOP's request for punitive damages. City asserts that this conclusion is binding on Wilson and precludes his claim here that City's (or Chief's) actions were intentional, willful, or malicious.

¶ 11 Wilson argues that issue preclusion does not apply because there is no privity between him and FOP.[2] To be in privity, a party must "actually have the same interest, character, or capacity as the party against whom the prior judgment was rendered." *Hildebrand v. Gray*, 1993 OK CIV APP 182, ¶ 16, 866 P.2d 447, 450–51. There are no hard and fast rules; the existence of privity depends upon the circumstances and requires " 'a person so identified in interest with another that he represents the same legal right.' " *Id.* (quoting 46 Am.Jur.2d, Judgments § 532 (1969)).

¶ 12 The Tenth Circuit has held that an employee and his union are not always in privity. *Mitchell v. City of Moore*, 218 F.3d 1190, 1203 (10th Cir.2000). In *Mitchell*, the union had exclusive control over the arbitration and did not vigorously present the claims because it was not in its interests to do so. *Id.* In this action, FOP vigorously pursued Wilson's argument that he was terminated for refusing to sign a liability waiver and take the polygraph examination. FOP also raised the issue of bad faith and willful conduct on City's part when it asked for punitive damages and directly argued that Wilson was terminated in violation of the policy on polygraph examinations. Wilson had control of the arbitration since he made the decision about whether to pursue lost wages. *See Greco v. Foster*, 1954 OK 42, ¶ 17, 268 P.2d 215, 220 ("[A] person not a party to the action, but who participates and

---

1. An arbitration award will not, however, preclude relitigation of a constitutional claim under the theory of *claim* preclusion where the arbitrator's consideration of the constitutional issue was necessarily limited. *Ryan v. City of Shawnee*, 13 F.3d 345 (10th Cir.1993). Where the issue *is* fully litigated during the arbitration and the parties had a full and fair opportunity to present their arguments, arbitration can be the basis of

issue preclusion. *Cities Serv. Co. v. Gulf Oil Corp.*, 1999 OK 14, ¶¶ 16–17, 980 P.2d 116, 125–26.

2. Although he denies he is in privity with FOP, Wilson relies on the arbitrator's decision to argue that he was found innocent.

who has control of and directs the litigation ... and does those things generally done by a party of record, is estopped to deny the validity of a judgment rendered therein."). Even though the arbitration proceeding arising out of Wilson's grievance was technically conducted by FOP, the identity of interests between Wilson and FOP, combined with his control over the issues presented by FOP on his behalf, lead us to the conclusion that he was in privity with FOP.

■ ¶ 13 Moreover, the issue was actually litigated and resolved in the arbitration proceeding.[3] The arbitrator was well within his area of expertise when he considered whether the evidence established that the contract was willfully or intentionally violated. Further, the evidence of willful or intentional violation was the same as the evidence Wilson submits here. Based on that evidence, the arbitrator concluded that there was no willful or intentional violation of the contract. Because FOP directly asked the arbitrator to rule on Chief's alleged reliance on the refused polygraph examination, his ruling necessarily implied a conclusion that there was no willful or intentional violation of the policy on polygraph examinations.[4] In fully analyzing City's stated reasons for terminating Wilson, the arbitrator also impliedly denied FOP's assertion that Wilson's termination was *solely* for refusing to take the polygraph examination.

¶ 14 Wilson is precluded from relitigating the issue of whether his termination was made in willful or intentional violation of the policy on polygraph examinations. If there was no willful or intentional violation of the policy on polygraph examinations, there can be no malicious violation of that policy. The issue was fully litigated during arbitration and the parties had a full and fair opportunity to present their arguments. Under these circumstances, the arbitration can be the basis of issue preclusion. For the purposes of this summary judgment, even if Wilson's employment was terminated in part because Chief believed he had refused to take a polygraph examination, that decision was not made in willful, intentional, or malicious violation of the policy. That factual determination is final.

## II

■ ¶ 15 The next issue we consider is whether Chief was outside the scope of his employment, rendering him personally liable on Wilson's tort claims of defamation and tortious interference with his employment. Both of Wilson's claims against Chief fall within the Governmental Tort Claims Act. 51 O.S.2001 & Supp.2003 §§ 151–200. If Chief was operating within the scope of his employment, he cannot be held personally liable and should not have been named in this lawsuit. *See Carswell v. Okla. State Univ.*, 1999 OK 102, ¶ 17, 995 P.2d 1118, 1123; 51 O.S.2001 § 163(C). "Scope of employment" is defined as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority." 51 O.S. Supp.2003 § 152(9). An employee's acts are not in the scope of employment if the employee acted with malice or in bad faith. *Pellegrino v. State ex rel. Cameron Univ.*, 2003 OK 2, ¶ 4, 63 P.3d 535, 537.

■ ¶ 16 Chief cannot be held personally liable for Wilson's claims for several reasons. First, we have already determined that Wilson cannot relitigate the arbitrator's determination that the contract was not violated willfully or intentionally. Since the violation of the contract was premised on Chief's ultimate decision to terminate Wilson, this precludes a finding of malice on his part. Moreover, City admitted in its answer that Chief was acting within the course and scope of his employment and never sought to escape its potential liability for Chief's actions. City is bound by that admission.

3. Unlike *Carris v. John R. Thomas & Assocs., P.C.*, 1995 OK 33, ¶ 13, 896 P.2d 522, 528, where it was impossible to tell whether the arbitrator addressed the issue sought to be precluded.

4. Interestingly, FOP also argued that significant weight *should* be given to the fact that Wilson subsequently took and passed a polygraph examination using another examiner. The arbitrator declined to do so, but FOP's position seems to advocate a violation of the policy just as Chief's alleged decision would have been.

¶ 17 Further, Wilson has not alleged any facts that would support a finding of malice. Even if Chief terminated Wilson in violation of the policy regarding polygraph examinations, that fact alone does not take him outside of his scope of employment. "If an employee acts in bad faith *and contrary to the interests of the employer* in tampering with a third party's contract with the employer," the employee may be considered to be acting outside the scope of his employment. *Martin v. Johnson,* 1998 OK 127, ¶ 32, 975 P.2d 889, 896–97 (emphasis added).

¶ 18 Wilson has alleged only that Chief decided to terminate his employment because he refused to sign the liability waiver, effectively refusing to take the polygraph examination. While such a decision would have been in violation of policy and the contract, Wilson alleges no further basis for concluding that Chief's decision was made maliciously. In Oklahoma, malice means "gross recklessness." *Burk v. K–Mart Corp.,* 1989 OK 22, n. 11, 770 P.2d 24 (Opala, J., and Lavender, J., concurring in part and dissenting in part). There is no evidence that Chief's decision was made with gross recklessness. Indeed, the arbitrator's opinion holds otherwise. Moreover, there is no evidence that Chief's decision was made with any degree of malicious intent toward Wilson, even if it was made in violation of the department's policy on polygraphs.

¶ 19 Acting in good faith and using poor judgment are not mutually exclusive and the use of poor judgment does not, without more, exceed the scope of employment. *Martin,* 1998 OK 127, ¶ 33, 975 P.2d at 896–97. In *Martin,* the Oklahoma Supreme Court considered at which point an officer could be determined to have tortiously interfered with his employer's contract to the degree that he is personally liable. The Court concluded that it is not tortious for an officer to interfere with a contract between his employer and another if it is done "by fair means," with "honest intent," and to better the employer's own business and "not to principally harm another." *Id.* at ¶ 31, 975

P.2d at 896 (quoting *Mason v. Okla. Turnpike Auth.,* 115 F.3d 1442, 1453 (10th Cir. 1997) (quoting *Morrow Dev. Corp. v. Am. Bank & Trust,* 1994 OK 26, n. 21, 875 P.2d 411)). The officer's action cannot be characterized as malicious or in bad faith based only on the fact of the interference with the contract. *Martin,* 1998 OK 127, ¶ 33, 975 P.2d at 897. Here, the record is devoid of other evidence regarding Chief's behavior or intentions toward Wilson in this context or any other. There is, therefore, no legal basis for concluding that Chief acted outside the scope of his employment.[5]

### III

¶ 20 We next consider Wilson's claim that he was terminated in violation of Oklahoma's public policy. A claim for wrongful discharge in violation of public policy is available only to at-will employees. *Barker v. State Ins. Fund,* 2001 OK 94, ¶ 14, 40 P.3d 463, 468. The Supreme Court has recently reiterated that this cause of action was created as an equitable remedy to balance the doctrine of employment-at-will and as an exception to that generally accepted doctrine. *Silver v. CPC–Sherwood Manor, Inc.,* 2004 OK 1, ¶ 4, 84 P.3d 728, 729. Police officers are not at-will employees. *Fraternal Order of Police, Lodge 108 v. City of Ardmore,* 2002 OK 19, ¶¶ 6–8, 44 P.3d 569, 571–72.

¶ 21 Wilson relies on two cases considering retaliatory discharge in violation of the Workers' Compensation Act to argue that a claim for wrongful termination is also available to workers who can only be fired for cause. *Hall v. ConAgra Foods, Inc.,* 2002 OK CIV APP 84, 53 P.3d 432; and *Redricks v. Indus. Vehicles Int'l, Inc.,* 2002 OK 13, 45 P.3d 416. Those cases address the prohibition of discharge in retaliation for filing a workers' compensation claim, a statutory right far more broadly drawn than has ever been recognized in the context of a common law wrongful discharge claim. 85 O.S.2001 § 5(A). While those cases discuss wrongful discharge as part of their general analysis of

5. Because we reach the conclusion we do, we need not address Chief's assertion that Wilson's claims against him are time-barred.

the employer's conduct, they do not support a conclusion that the common law tort of wrongful discharge in violation of public policy has been extended to non-at-will employees. As a contract employee who cannot be terminated without cause, Wilson had no claim for discharge in violation of public policy and the district court properly determined that this portion of his claim failed as a matter of law.

## IV

¶ 22 We next consider whether the press release regarding Wilson's termination was defamatory. "A communication is defamatory if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Herbert v. Okla. Christian Coalition*, 1999 OK 90, n. 4, 992 P.2d 322; *see also* 12 O.S.2001 § 1441. As a public official, Wilson had to prove that the press release was published "with actual malice (with knowledge that it was false or with reckless disregard of whether it was false)."[6] *Gaylord Entm't Co. v. Thompson*, 1998 OK 30, n. 46, 958 P.2d 128. The existence of actual malice is a question of law for the court to determine and must be established by clear and convincing evidence. *Herbert*, 1999 OK 90, ¶ 18, 992 P.2d at 328.

¶ 23 The press release issued on February 3, 2000, stated:

### Officer Terminated for Alleged Theft

Officer Brian C. Wilson a 4–year veteran of the Tulsa Police Department was terminated today for issues regarding the alleged theft of money and truthfulness after the fact. The termination is the result of an incident, which occurred on November 28th, 1999 and involved the arrest of a domestic violence suspect.

This person reported the alleged theft of $300.00 from his personal property.

Officer Wilson is accused of being in violation of the following *TPD Rules and Regulations:*

Rule 3: *DUTY TO KNOW, ENFORCE, AND OBEY LAWS AND ORDINANCES*

Rule 6: *DUTY TO BE TRUTHFUL AND OBEDIENT*

City argues that the press release was accurate and was not published with malice. We agree. The uncontested fact is that Wilson was officially terminated for the reasons stated in the press release. *See* 12 O.S.2001 § 1443.1(A)(Third). Even if Chief had another, privately-held and improper reason for concluding that Wilson was lying, there is no evidence that the reasons stated in the press release were not also true. There is simply no evidence of malice in the defamatory sense. *See Gaylord*, 1998 OK 30, n. 46, 958 P.2d 128.

The "actual malice" standard to be met by the public figure plaintiff is a formidable one. This Court has said that when public figures ... sue for libel or slander, their rights to recover are severely limited. "Actual malice" requires, for example, "false statements made with [a] high degree of awareness of their probable falsity." Failure to conduct a thorough investigation is not a sufficient basis to establish actual malice. Negligence is not enough to rise to the level of "actual malice," and malice may not be inferred simply from a showing that the publication was untrue.

*Herbert*, 1999 OK 90, ¶ 19, 992 P.2d at 328 (footnote; citations omitted). Based on the evidence presented, we cannot infer that Chief's alleged improper motive was the *only* motive. This is the inference we would have to make to conclude that there was a question of fact regarding malice in the defamatory sense.

¶ 24 Moreover, the press release was made in accordance with Chief's standard policy of communicating decisions regarding allegations of police wrongdoing to the press. This policy, while voluntary, was unquestionably in furtherance of Chief's duty to foster and promote a "proactive relationship with the citizens of the City of Tulsa," as set forth in his official job description. There is no evidence that the press release about Wil-

---

6. Wilson correctly asserts that malice in the defamatory sense is not the same as malice in the general sense as discussed elsewhere in this opinion.

son's termination was made for any other reason than standard policy. The press release was, therefore, privileged pursuant to 12 O.S.2001 § 1443.1(A)(Second) because it was made "[i]n the proper discharge of an official duty." The element of "proper discharge" is not lost merely because some part of Chief's decision may have been contrary to City's official policy. *See generally Martin v. Johnson*, 1998 OK 127, ¶ 33, 975 P.2d 889, 897.[7]

### V

 ¶ 25 Finally, we consider Wilson's allegation that his rights of free speech, based on the Oklahoma Constitution, were violated because he was terminated for refusing to sign the waiver. Article 2, § 22 of the Oklahoma Constitution provides, in pertinent part, the following:

> Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press.

A city is not generally liable for the acts of its employees under the theory of respondeat superior. *Brander's Club, Inc. v. City of Lawton*, 1996 OK 66, ¶ 11, 918 P.2d 69, 72.[8] For a municipality to be liable for a violation of the United States Constitution, the acts complained of must fairly be said to represent official policy. *Id.* We will apply this same standard to the Oklahoma Constitution's guarantee of free speech.

¶ 26 It is arguable that Chief may be, under some circumstances, a policy-maker such that his actions could be construed as City's policy. *Barnthouse v. City of Edmond*, 2003 OK 42, ¶ 30, 73 P.3d 840, 851–52. Here, however, City's official policy was that a polygraph examination or the refusal to take a polygraph examination would not be

the basis for any discipline. Wilson's constitutional right of free speech was not violated by his termination, even if his termination was solely due to the polygraph examination issue, because that was not City's policy.

### CONCLUSION

¶ 27 The trial court did not err in granting summary judgment in favor of City and Chief in a police officer's action for wrongful termination, violation of constitutional rights, defamation, and tortious interference with contract. There is no evidence that Chief's actions, even if in violation of policy, were outside the scope of his employment so as to make him personally liable. Further, Wilson, who could be fired only for cause, has no claim for wrongful termination in violation of public policy because that tort is an exception to the doctrine of employment-at-will. Moreover, Wilson did not introduce evidence that the press release setting forth the official reasons for his termination was untrue or was done in reckless disregard of the truth. Finally, even if Chief's decision to terminate Wilson was solely based on Wilson's refusal to submit to a polygraph examination, that decision was not in accord with City's policy and could not form the basis of a constitutional claim. The material facts were not contested and the issues confronting the district court were legal issues. Summary judgment, therefore, was appropriate.

¶ 28 AFFIRMED.

REIF, P.J., and RAPP, J., concur.

---

**7.** City's reliance on *Hughes v. Bizzell*, 1941 OK 277, 117 P.2d 763, however, is misplaced. The finding of absolute privilege in *Hughes* was based on the fact that the alleged defamatory comments were made to the Board of Regents during a session convened to consider the discharge of the plaintiff. The determining factor, therefore, was the venue in which the statements were made, not whether the defendants were acting in the proper discharge of their duties. *Id.* at ¶¶ 8–9, 117 P.2d at 765.

**8.** The Governmental Tort Claims Act, 51 O.S. 2001 & Supp.2003 §§ 151–200, is not applicable to constitutional claims. *Brander's Club, Inc. v. City of Lawton*, 1996 OK 66, ¶ 8, 918 P.2d 69, 71.