Chauncy Ray DEPUY and Paul E. Depuy, Plaintiffs–Appellees,

v.

Roland HOEME, Defendant–Appellant.

No. 67423.

Supreme Court of Oklahoma.

March 15, 1989.

Rehearing Denied July 19, 1989.

Andrew T. Dalton, Jr., Tulsa, and Larry L. Field, Guymon, for defendant-appellant.

John G. Spires, Cherri Farrar, Grove, Grove & Associates, Oklahoma City, for plaintiffs-appellees.

OPALA, Vice Chief Justice.

The issue tendered for our decision is whether the *deceased predecessor trial* judge's 1977 oral postdecree, midappeal directives—specifying the work required to satisfy the command of a previously issued mandatory injunction—had res judicata effect in the instant enforcement proceeding before the *successor judge*. Disposition of this question requires that we initially focus on the previous midappeal enforcement directives. Because no journal entry was ever prepared of this 1977 judicial ruling whose unmemorialized terms vitally affect the inquiry into issues presently on appeal, the trial court's postdecree decision now before us must be reversed and the cause remanded with directions to settle the journal entry of this critical disposition in an adversary hearing to be conducted on due notice to the parties. After the memorialization process has been completed, the trial court shall then decide if the predecessor judge's ruling constituted a final and appealable postdecree order; if so, the memorialized disposition shall be given res judicata effect insofar as the ruling defined the details of the work that *must* be performed to comply with the mandatory injunction decree of November 29, 1976.

## THE ANATOMY OF LITIGATION

This appeal arises out of a settled dispute that culminated in this court's pronouncement in *Depuy v. Hoeme.*[1] There, we affirmed the trial court's 1976 decree[2] denying the Depuys' quest for injunctive relief and granting Hoeme a mandatory injunction.[3]

The case dealt with the parties' competing claims to the use of water from Wild Horse Lake, a natural playa lake located partly on both of their adjoining premises. During the course of the controversy the Depuys constructed a road dike designed to prevent drainage water from reaching the portion of the lake which was located on

---

**1.** Okl., 611 P.2d 228 [1980] (*Depuy I*). *Depuy I* decided the consolidated appeal in *Depuy v. Hoeme,* No. 50,472 and *Depuy v. Oklahoma Water Resources Board,* No. 51,960.

**2.** All references to the trial court's decision in *Depuy I* are to its ruling in *Depuy v. Hoeme,* No. 50,472.

**3.** On November 29, 1976 the trial court ordered the Depuys to put culverts in their elevated road so that water could flow into the lake bed without obstruction. It is from the November 29, 1976 injunction decree that the Depuys took an appeal which resulted in this court's *Depuy I* pronouncement.

Hoeme's land. The trial court's decree of mandatory injunction required that the Depuys remove the offending "road dike from the bed of the lake, or ... construct culverts under it to enable passage of the water under the road." [4]

During the pendency of the earlier appeal from the 1976 decree, but before this court's mandate in *Depuy I*, the *predecessor judge* held a contempt hearing to determine whether the Depuys had complied with the then-unstayed injunction's command.[5] Hoeme's counsel requested at that hearing that the judge view the premises because that would be "the quickest way, the most illuminating way ... to resolve this issue *once and for all.*" [6] Though the court found the injunction decree had not been fully satisfied, it reserved a ruling with respect to any punishment and admonished the Depuys that they were "not relieved of the penalty of contempt *until* ... [they] accomplished the indicated directives]." [7] It is then that the judge announced certain directives concerning work to be done for complete compliance with the injunction decree.[8] According to the transcript, the predecessor judge had directed that certain dirt be removed [9] and the pipe installed to permit free water

flow.[10] While during this hearing the judge indicated his intention to have these directives memorialized,[11] no journal entry appears in the record and, so far as we can ascertain, none was ever prepared.[12] According to a later "bench docket" entry, the predecessor judge's personal inspection of the premises revealed that the required dirt removal had been accomplished, but the pipe had not been installed "due to a conversation with counsel." [13] No ruling was ever issued imposing any sanction for the pressed contempt charge.

This court affirmed the November 29, 1976 mandatory injunction by its February 19, 1980 pronouncement in *Depuy I.* On May 9, 1985 Hoeme filed below his "motion for execution." He invoked the *successor judge's* assistance for postappeal enforcement of the November 1976 mandatory injunction and of this court's mandate in *Depuy I.* At the enforcement hearing Hoeme asserted that because the Depuys were still blocking the water flow he needed a "writ of assistance", to be carried out by the sheriff, for the *removal of the entire impeding road dike.* In defense the Depuys urged that except for the pipe's placement they had *fully complied* with the directives the predecessor judge had

**4.** *Depuy I, supra* note 1 at 230.

**5.** In the 1977 hearing, Mr. Hoeme's counsel advised the predecessor judge that "[o]n November 29 of 1976 this court entered an order granting certain injunctive relief to Mr. Hoeme, and directing that the [Depuys] ... perform certain acts.... It is the position of the defendant that that order has not been complied with." Transcript of Proceedings, Contempt Hearing held May 16, 1977 [hereinafter "Transcript"], at pp. 12–13.

**6.** Transcript at p. 13.

**7.** Transcript at p. 118.

**8.** Transcript at p. 107.

**9.** The court ordered the Depuys to bulldoze (a) a breakthrough one-half mile east of the "four corners"; to build (b) an additional breakover at the four corners area; and to (c) gouge out a spillway. Transcript at pp. 107–112.

**10.** Transcript at pp. 107–112.

**11.** Transcript at pp. 127–128.

**12.** According to the terms of the successor judge's order here under review,.the directives announced by his predecessor were never memorialized.

**13.** This information was entered upon the judge's "bench docket" under the date of May 23, 1977. While a bench docket is not part of the appellate record (*Chamberlin v. Chamberlin,* Okl., 720 P.2d 721, 723 [1986] ), any fact either stipulated or admitted in the brief may be considered as supplementing a deficient record on appeal. See *Womack v. City of Oklahoma City,* Okl., 726 P.2d 1178, 1181 [1986]; *Chamberlin v. Chamberlin, supra* at 724, n. 6; *Timmons v. Royal Globe Ins. Co.,* Okl., 713 P.2d 589, 592 [1986]; *Eckel v. Adair,* Okl., 698 P.2d 921, 923 [1985]. In their briefs to us *both parties* used this extra-record information doubtless gleaned by them from the trial judge's bench docket.

given in open court during the 1977 hearing.[14] The successor judge thereafter determined that the Hoeme-raised issue—with respect to the steps the Depuys must take to comply fully with the mandatory injunction—had been completely litigated before the predecessor judge and stood resolved by the latter's May 16, 1977 ruling. Applying res judicata, the successor judge concluded that the matter before him could not be relitigated. Hoeme brings this appeal, urging error in the trial court's application of the preclusive bar.[15]

# I

## THE NATURE OF THE RELIEF SOUGHT BY HOEME

Although characterized as one for contempt, the 1977 hearing focused primarily on the conditions necessary for compliance with the November 1976 mandatory injunction. The present postdecree proceeding, brought below before the successor judge, was triggered by Hoeme's "motion for execution." The parties later agreed Hoeme sought relief under the provisions of 12 O.S.1981 § 902.[16] His object was to seek enforcement both of the injunction decree and of this court's mandate in *Depuy I*[17] by a ruling that *further* performance—the removal of the entire road dike—was necessary for the Depuys to comply with the

injunctive relief's command and with this court's mandate in *Depuy I*.

Hoeme now seeks reversal of the trial court's decision insofar as it gives res judicata effect to the 1977 oral directives and precludes judicial reexamination of the nature of work required of the Depuys to comply with the injunction decree's command. The decision presently tendered for our review necessarily requires that our attention be focused both *on the terms* and *on the legal effect* of the predecessor judge's 1977 ruling. While the successor judge's decision stands memorialized by a formal journal entry, that of his predecessor is not. Inasmuch as no written memorial of the predecessor judge's ruling was ever entered of record, we must first decide *whether the unmemorialized directives of 1977 are entitled to res judicata effect.*

# II

## A WRITTEN MEMORIAL OF THE TRIAL COURT'S 1977 RULING IS AN INDISPENSABLE PREREQUISITE FOR THE REVIEWING COURT'S APPRAISAL OF ITS PRECLUSIVE EFFECT

A superior court of common law speaks only through its record. The appealing party bears the burden of procur-

14. According to the May 23, 1977 "bench docket" entry, Hoeme's counsel had requested that the pipe not be installed. Unclear as to the status of the placement-of-the-pipe requirement, the successor judge directed Hoeme to file an election that would advise the court whether he wanted the pipe put in place. He also ordered that if Hoeme elected to have the work done, the Depuys should complete it within a specified time period. Failing completion, the court indicated, a "writ of assistance" would issue in Hoeme's favor.

15. The doctrine of *res judicata* is presently called "claim preclusion." *Veiser v. Armstrong,* Okl., 688 P.2d 796, 800, n. 8 [1984]. See also, Restatement (Second) of Judgments § 74 [1982].

16. The terms of 12 O.S.1981 § 902 provide: "When the judgment is not for the recovery of money or real property, the same may be

enforced by attachment, by the court rendering judgment, upon motion made, or by a rule of the court upon the defendant; but in either case, notice of the motion or a service of a copy of the rule shall be made on the defendant, a reasonable time before the order of attachment is made."

17. The terms of 12 O.S.1981 § 902, *supra* note 16, clearly authorize resort to civil arrest preliminary to a contempt proceeding for noncompliance with a mandatory injunction. As a general rule, a mandatory injunction is enforced, or its violation punished, by contempt. See in this connection, *Clark v. Most Worshipful St. John's Grand Lodge, Etc,* 198 Okl. 621, 181 P.2d 229, 231 [1947]; see also, *Forsythe v. Washtenaw Circuit Judge,* 180 Mich. 633, 147 N.W. 549, 550 [1914].

ing a record sufficient to support the corrective relief which is sought.[18] That record *must always include* a written memorial of the judicial action which either triggered the appealable event *or that which is essential to its appellate review*.[19]

■ The absence of a written memorial is not essential to the validity or finality of a judgment or order, nor does the failure promptly to file the entry render a ruling ineffective or unenforceable.[20] A judgment or order is rendered and begins its legal life as soon as it is pronounced from the bench and before it is ever reduced to writing for entry of record by the clerk.[21] While any judgment or order is operative from the moment it is announced, the *only*

*legitimate evidence* of the adjudication's *legal existence*, of its *terms* and of its *legal effect* is the record entry bearing the judge's signature.[22]

■ The doctrine of res judicata,[23] which applies with like force to judgments or decrees of the court as it does to its postjudgment and postdecree rulings that stand in law as "final," [24] teaches that when the appeal time expires a decision under this rubric becomes impervious to reconsideration and hence binding and conclusive upon the parties. In short, terminal judicial rulings—whether they be judgments or postjudgment dispositions—reach a final determination stage, settle the parties' rights and by force of law are placed beyond the trial court's power to alter, except only

18. *Chamberlin v. Chamberlin, supra* note 13 at 724; *King v. Sherrill,* Okl., 496 P.2d 803, 804 [1972].

19. *Chamberlin v. Chamberlin, supra* note 13 at 724. See also, *Huff v. Huff,* Okl., 687 P.2d 130, 131 [1984]; *Willitt v. ASG Industries, Inc.,* Okl., 572 P.2d 1296, 1297 [1978]. *The recorded memorial of the judicial action tendered for corrective relief is the sine qua non* of appellate review. See 12 O.S.1981 § 32.2; *Johnson v. Johnson, infra* note 27 at 542; *Cumby v. State ex rel. Vinzant,* Okl., 468 P.2d 490, 493 [1970].

20. *Miller v. Miller,* Okl., 664 P.2d 1032, 1034 [1983]; *McCullough v. Safeway Stores, Inc.,* Okl., 626 P.2d 1332, 1335, n. 8 [1981]; *Ashinger v. White, infra* note 21.

21. Rule 1.11, Rules on Perfecting a Civil Appeal, 12 O.S.1981, Ch. 15, App. 2; see also *Barrett v. Barrett,* Okl., 249 P.2d 88, 90–91 [1952]; *Ashinger v. White,* 106 Okl. 19, 232 P. 850 [1925] (syllabus 1).

22. *Miller v. Miller, supra* note 20; *Johnson v. Johnson, infra* note 27 at 542, n. 4; *Cumby v. State ex rel. Vinzant, supra* note 19.

23. Under the doctrine of res judicata (claim preclusion), a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308, 311 [1980]; *Veiser v. Armstrong, supra* note 15 at 800. When in an *action* an issue of law or fact is finally decided after a full and fair inquiry by a court of competent jurisdiction, the same question cannot thereafter be revisited

and decided differently in another subsequent and different suit or proceeding between the same parties. *Runyan v. City of Henryetta,* Okl., 321 P.2d 689, 693 [1958]; *Cherry v. Godard,* 179 Okl. 158, 64 P.2d 315, 321 [1937]. *Finality,* then, is the prerequisite for the application of the doctrine of claim preclusion. While the "finality" requirement has troubled courts and oft times its application may vary with the circumstances, all courts agree that, after *the expiration of appeal time when no appeal has been taken,* a judgment acquires the degree of finality requisite for the application of res judicata doctrine. See *Allen v. McCurry, supra,* 449 U.S. at 94, 101 S.Ct. at 414; Restatement (Second) of Judgments, *supra* note 15 at § 74.

24. 12 O.S.1981 § 953 *defines final postjudgment orders* that are appealable in the following terms:
"An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and *an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment, is a final order,* which may be vacated, modified or reversed [by an appellate court], as provided in this article." [Emphasis added.] See *Barnett v. Bohannon,* 27 Okl. 368, 112 P. 987, 988 [1910]; *Southwestern Natural Gas Co. v. Vernor,* 178 Okl. 344, 62 P.2d 1262, 1264–1265 [1936].
For the *preclusive effect of postjudgment orders,* see *Salyer v. National Trailer Convoy, Inc.,* Okl., 727 P.2d 1361, 1363 [1986]; *White v. White,* Okl., 607 P.2d 700, 702 [1980]; *Bruce v. Miller,* Okl., 360 P.2d 508, 511–512 [1961]; *Tippins v.*

upon resort to §§ 1031 and 1031.1 [25] remedies which prescribe vacation or modification procedures.[26] The attribute borne by a "final order" stands in marked contrast to a *prejudgment order.* The latter always remains subject to the trial judge's change before judgment is pronounced in the case.[27]

 Before a reviewing court can determine the res judicata effect of any prior adjudication by a trial court, the ruling to be gauged for its preclusive effect must stand memorialized.[28] No preclusive effect may be accorded to a judge's ruling unless the decision's existence and its terms be established by its record entry.[29] The proof necessary for a record entry's preparation can be supplied and its provisions settled in an adversary hearing.[30]

The trial court's postdecree decision under review must hence be reversed and the cause remanded for a hearing necessary to

generate a memorial of the critical predecessor judge's 1977 ruling.

## III

THE *DEPUY I* MANDATE IS PRESUMPTIVELY ENFORCEABLE UNLESS THE DEPUYS SHOW ON REMAND THE EXISTENCE OF A RES JUDICATA BAR TO ITS ENFORCEMENT

Hoeme moved below for the successor judge's assistance to enforce the terms of both the injunction decree and of this court's mandate in *Depuy I.* Because Hoeme viewed the mandate affirming the injunction *as broader in scope* than the relief afforded him by the oral midappeal directives, he sought an order directing the entire road dike to be removed rather than one that would be limited to requiring the pipe to be placed in the dike.

 Hoeme is, of course, favored by a presumption that the mandate in *Depuy I*

---

*Turben,* 162 Okl. 136, 19 P.2d 605, 608 [1933]; *Brett v. Fielder,* 136 Okl. 222, 277 P. 216, 217 [1929].

**25.** See 12 O.S.1981 §§ 1031 and 1031.1 for the terms of statutes that afford postjudgment vacation and modification relief.

**26.** See also *infra* note 35.

**27.** The trial judge retains *full* control over all *temporary orders* in the case and over the manner of their enforcement. None is entitled to res judicata effect. Interlocutory orders made in the course of an action or proceeding are not binding on the trial court when final adjudication of the controversy is crafted. *Johnson v. Johnson,* Okl., 674 P.2d 539, 543 [1983] (predecree orders in a divorce case are always subject to the judge's power to extinguish or modify); *Reynolds v. Reynolds,* 192 Okl. 564, 137 P.2d 914, 916 [1943]; *Lee v. Epperson,* 168 Okl. 220, 32 P.2d 309, 312 [1934]; *Ft. Dearborn Trust & Savings Bank v. Skelly Oil Co.,* 146 Okl. 179, 293 P. 557, 562 [1930]; *Wells v. Shriver,* 81 Okl. 108, 197 P. 460, 472 [1921]; *Kuchler v. Weaver,* 23 Okl. 420, 100 P. 915, 918 [1909].

**28.** *Miller v. Miller, supra* note 20; *Elliott v. City of Guthrie,* Okl., 725 P.2d 861, 863, n. 10 and 11 [1986].

**29.** *Johnson v. Johnson, supra* note 27 at 542; *Elliott v. City of Guthrie, supra* note 28; *Miller v. Miller, supra* note 20.

**30.** *Armstrong v. Trustees of Hamilton Inv. Trust,* Okl., 667 P.2d 985, 987 [1983]; *McCullough v. Safeway Stores, Inc., supra* note 20 at 1134–1135; *Werfelman v. Miller,* 180 Okl. 267, 68 P.2d 819, 820 [1937]. An adversarial settlement-of-journal-entry hearing to memorialize a previously rendered judgment or order of the court is essentially a proceeding for a nunc pro tunc memorialization of errors or omissions in the record. *Armstrong v. Trustees of Hamilton Inv. Trust, supra* at 987. The office of a nunc pro tunc order is to reconstruct and spread of record a true memorial of what did in fact occur in the litigation but about which the court's record speaks either imperfectly or incorrectly or, as it is the case here, it is entirely silent. *Dickason v. Dickason,* Okl., 607 P.2d 674, 676–677 [1980]; *Stevens Expert Cleaners & Dyers v. Stevens,* Okl., 267 P.2d 998, 1001 [1954]; *Brougham v. Independent Potash & Chemical Co.,* 200 Okl. 659, 199 P.2d 211, 212 [1948]. In short, a nunc pro tunc order to supply the terms of a judgment or order actually rendered but not memorialized is the procedural avenue available to make the record, when corrected, "speak the truth." *Mabry v. Baird,* 203 Okl. 212, 219 P.2d 234, 239–240 [1950]; *Stevens Expert Cleaners & Dyers v. Stevens, supra* at 1001. A *nunc pro tunc entry may be supplied at any time. Dickason v. Dickason, supra* at 676. The common-law power of a trial court to memorialize its actions nunc pro tunc is not limited by our statutes. *A trial court's ruling in a postjudgment contest* over a nunc pro tunc settlement or correction of a journal entry *constitutes an appealable disposition. Armstrong v. Trustees of Ham-*

is *unconditionally enforceable.* The procedural consequence of this presumption—which gives effect to the mandate and also makes the terms of the injunctive relief fully enforceable—would *shift* to the Depuys the entire *burden* of showing that the 1977 ruling of the predecessor judge constitutes a *terminal postdecree* order that must be given res judicata effect.

■ Ordinarily, the terms of this court's mandate would prevail over anything to the contrary.[31] The one exception—found to be present here—applies when the case goes on appeal from an unstayed or unsuperseded decree and during the appeal's pendency the trial court exercises its plenary power over the enforcement of that unsuperseded or unstayed decision.[32] In any postdecree enforcement proceeding a party would have but one opportunity—a single "whack,"[33] so to speak—to secure a trial court's ruling on what steps are required for full and complete compliance with the injunction's terms. Under the restrictions imposed by the "one-whack" principle, the terms of a final order dispositive of that issue, once rendered in a postdecree, midappeal enforcement proceeding, would *control over any contrary terms of the mandate.*

■ Because the injunction decree was neither stayed nor superseded, the deceased predecessor judge retained full cognizance over the *methods as well as the terms* to be prescribed for its enforcement. Should the predecessor judge's 1977 ruling, when memorialized upon remand, reflect that his oral directives were issued to serve as but an *interlocutory* provisional postdecree arrangement, or if the ruling in some other way should prove not to *bear the attributes of a complete and final disposition* that concluded a postdecree enforcement proceeding, no res judicata effect could be accorded any of these directives. This is so because they would not qualify as part of an *appealable postdecree order.*[34] If, on the other hand, the predecessor judge's oral, open-court decision was in fact a *terminal,* postdecree, midappeal *order*—i.e., one that fully brought to an end the contempt proceeding then pending—the unappealed postdecree order would, under the "one-whack" principle, qualify for res judicata effect and *control* over the *Depuy I* mandate. Even if the 1977 ruling had erroneously narrowed the scope of the 1976 injunction, later affirmed by this court's mandate, the former would nonetheless control over the latter.[35]

In sum, this court's mandate in *Depuy I* is presumptively enforceable *unless* the

*ilton Inv. Trust, supra* at 987; *Stevens Expert Cleaners & Dyers v. Stevens, supra* at 1001.

31. When a mandate is issued, the trial court has the duty to comply with its terms. *Hurst v. Brown,* Okl., 266 P.2d 438, 440 [1954]; *Grayson v. Stith,* 192 Okl. 340, 138 P.2d 530, 533 [1943]. When a cause is remanded for further proceedings, the reviewing court is empowered to require further action, when necessary, to exact complete compliance with its opinion and mandate. *State v. District Court of Osage County,* 188 Okl. 663, 112 P.2d 381, 383 [1941].

32. The only purpose and effect of a superseded or stayed judgment is to prevent execution or other proceedings to enforce that decision. *Hutchings v. Winsor,* 92 Okl. 37, 217 P. 1044, 1045 [1923]; *Nicholson v. State,* 132 Okl. 298, 270 P. 567, 569 [1928]. "Supersedeas" is different from "stay"; the former denotes a suspension of a judgment's effectiveness pursuant to an undertaking as a matter of statutory right, whereas the latter means suspension of effectiveness by a discretionary act of a trial or

appellate court. *Wilks v. Wilks,* Okl., 632 P.2d 759, 763, n. 12 [1981].

33. *White v. White, supra* note 24 at 702; *Bruce v. Miller, supra* note 24 at 511–512.

34. See the terms of 12 O.S.1981 § 953, *supra* note 24.

35. The legal effect of the 1977 midappeal ruling—even if its terms were erroneous—is analogous to that which attaches to a *postjudgment modification or vacation order* rendered in midappeal under the authority of 12 O.S.1981 §§ 1031 and 1031.1. When, while an appeal for full review of a judgment remains pending, a vacation or modification proceeding is brought below, which raises *different* issues and results in a modification order that is not tendered for appellate scrutiny, the modification-of-judgment ruling will control over the terms of the mandate in the appealed judgment. This is true even if the unappealed postjudgment modification be legally erroneous. In short, a postjudgment modification order which becomes final when no appeal is brought—no matter how erroneous—will control over the mandate is-

Depuys succeed on remand in showing that the predecessor judge's 1977 ruling meets the attributes for the application of a res judicata bar. The burden is cast on the Depuys. They can satisfy the onus by showing that (1) the predecessor judge had rendered an appealable order *fully dispositive* of a postdecree enforcement proceeding and (2) Hoeme allowed that decision to become final by not challenging its terms on appeal.[36]

## CONCLUSION

The trial court's decision is reversed and the cause remanded for a settlement-of-journal-entry hearing and for a reassessment of the 1977 ruling's res judicata effect, if any it had. A full-scale hearing must be conducted *in advance of* effecting a record entry of the predecessor judge's midappeal, postdecree ruling.[37] The preclusive effect of that ruling will depend on whether it can stand as *fully dispositive* of the 1977 postdecree enforcement proceeding. Upon remand (1) an adversary evidentiary hearing must be held [38] on due notice to the parties; (2) the terms of the prede-

cessor judge's 1977 ruling in question shall be settled; and (3) if it be determined that a postdecree order had in fact been made, its precise provisions must be incorporated within a written memorial for record entry. Once this has been accomplished, the trial judge can then reassess whether the predecessor judge's 1977 ruling, as memorialized by its post-remand record entry, constitutes a final, appealable postdecree disposition that defines the type of work that must be done to satisfy the earlier mandatory injunction's provisions. If the trial judge should determine that the postdecree order lacks the essential attributes of finality required of an appealable postjudgment disposition,[39] then the conditions to be required for full compliance with the injunction decree would remain open and subject to further judicial inquiry and adjudicative cognizance upon remand.

The trial court's postdecree order is reversed and the cause remanded for further proceedings not inconsistent with this pronouncement.

HARGRAVE, C.J., and LAVENDER, KAUGER and SUMMERS, JJ., concur.

---

sued in the appeal from the judgment. See *Matter of Estate of Burkhart v. Wabaunsee*, Okl., 594 P.2d 361, 363 [1979]; *Pleasant v. Allen Bros.*, 180 Okl. 518, 71 P.2d 114, 116–117 [1937]; *Philip Carey Co. v. Vickers*, 53 Okl. 569, 157 P.2d 299 [1916]. Where, as here, the issues tendered by a postdecree enforcement proceeding are different from those pressed on appeal from the judgment, because the latter issues pertain solely to the *satisfaction* of the unsuperseded or unstayed decree by performance of *its* conditions, the trial court retains full cognizance over enforcement-related matters while an appeal from judgment remains pending and undecided. Under the "one-whack" rule, the postjudgment order on performance-related issues would control over the terms of *mandate issued in the appeal from the judgment.*

36. It does not matter here that the 1977 hearing was characterized as one for contempt and no punishment on the contempt charge may have been issued. The 1977 postdecree enforcement proceeding could have been terminated by *any* order that was *fully dispositive* of that proceeding, as distinguished from one made *pending disposition of the contempt* charge. An order *fully dispositive* of contempt would be but one example of a postdecree disposition entitled to the "one-whack" rule. See *White v. White*, supra note 24 at 702. A terminal disposition of a

contempt proceeding qualifies as a "final", appealable decision. *Hampton v. Hampton*, Okl., 609 P.2d 772, 773 [1980].

37. A successor judge can memorialize the adjudications of a predecessor judge. See *City of Clinton v. Keen*, 192 Okl. 382, 138 P.2d 104, 107–108 [1943]. It is the duty of a trial court, in a proper evidentiary proceeding and upon sufficient proof, to cause to be entered orders and judgments which have failed to be recorded. Cf. *Feagin v. Fife*, 198 Okl. 57, 175 P.2d 81, 84 [1946]; *Parks v. Briggs*, Okl., 268 P.2d 283, 284–285 [1954].

38. An adversary proceeding to determine the sweep of the 1977 decision is also essential to meet the applicable due process standards.

39. See the provisions of 12 O.S.1981 § 953, *supra* note 24. We note that under § 953 not all rulings made in postjudgment stages of litigation are final. Unless they have attained finality, all such rulings are akin to prejudgment interlocutory orders. They may not be appealed nor can they claim the benefit of the res judicata bar until an appealable postjudgment order has been rendered. In short, they remain "in the bosom of the trial court" and within the latter's power to change before "finality" is attained.

HODGES and ALMA WILSON, JJ., dissenting: We would affirm the trial court's decision.

DOOLIN, J., dissents.

SIMMS, J., not participating.