2009 OK CIV APP 5

**Nancy DOYLE, Plaintiff/Appellant,**

v.

**Jeremy SMITH and Dana Smith, Defendants/Appellees,**

and

**James A. Smith and Dorothy L. Smith, Plaintiffs/Appellees,**

v.

**Nancy Doyle, Defendant/Appellant.**

**No. 104,698.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 18, 2008.

Certiorari Denied Jan. 12, 2009.

Jarrod Heath Stevenson, Stevenson Law Firm, PLLC, Oklahoma City, OK, for Plaintiff/Appellant, Defendant/Appellant, Nancy Doyle.

Payton L. Phelps, Durant, OK, for Defendants/Appellees, Jeremy and Dana Smith.

Don Michael Haggerty, D. Michael Haggerty, Haggerty & Haggerty, Durant, OK, for Plaintiffs/Appellees, James A. and Dorothy L. Smith.

KEITH RAPP, Chief Judge.

¶ 1 Nancy Doyle (Doyle) appeals from a judgment against her in a consolidated action where, in one case, Doyle was plaintiff and Jeremy Smith and Dana Smith (D.Smith) were defendants, and in the other case, James A. Smith (Smith) and Dorothy Smith, were plaintiffs and Doyle was defendant.[1]

## BACKGROUND

¶ 2 This case began as a boundary dispute between Doyle and Smith. They are neighbors since each purchased their respective property in the 1970s. Their property was separated by an old, meandering fence and trees on Smith's west side and Doyle's east side.[2] The fence was in place when they each purchased the property. The dispute that arose was whether the fence and trees constituted the boundary line.

¶ 3 The dispute escalated when Smith began to remove the fence and trees. Doyle filed suit against Smith and his wife on August 23, 2002, seeking injunctive relief to restore the fence and a determination that she owned the property on her side of the fence line by virtue of adverse possession.[3] The case was tried before the court on August 24, 2004.[4]

¶ 4 The court heard testimony and received documentary evidence detailing the history of the ownerships and the parties' relationships. Smith appeared *pro se*. Both sides presented evidence as to their exclusive uses of their property up to the fence. James Smith testified that he thought the matter was settled by having a survey and establishing a new fence on the survey line. He also testified that he owned the property on his side of the fence and Doyle owned the property on the other side and that the general community knew that the fence was the boundary. He also testified that he had never sold any of his twenty acres since 1979 and that he owned twenty acres.[5]

¶ 5 Smith's daughter, Dana Smith, testified as a witness on his behalf. She testified that the general community knew that Smith owned on the east side of the fence and that Doyle owned on the west side and that the fence was the boundary.[6] She further testified that she and her father recognized the fence as the boundary and conducted themselves accordingly.[7] She was not asked, at this trial, and she did not volunteer, whether she owned any of the twenty acres by virtue of a conveyance from her father.

¶ 6 The court, after both sides completed their presentations, announced that the case was taken under advisement. The court informed the parties, "I will let you know my decision by Minute Order."[8]

¶ 7 On October 18, 2004, the trial court signed and filed a typed Order (October 18th

---

1. Dana Smith is the daughter of James and Dorothy Smith. During the course of these proceedings Dana and Jeremy Smith divorced and Jeremy Smith disclaimed any interest that is involved in this matter.

2. Doyle owns a "long" 80 acres running east to west. Smith owned a "long" 20 acres running north to south. As a result, only the northern one-half of Smith's "long" side abutted Doyle's property.

3. This action will be referred to as "Doyle I."

4. The trial transcript and court record are part of the record in this appeal.

5. Doyle I, Tr., pp. 147–48.

6. Doyle I at pp. 133–34.

7. Doyle I at pp. 135–36.

8. Doyle I at p. 166.

Order).[9] This document contains the case caption and case number and is styled "Order." In the lower left corner of the document a handwritten notation reads:

π to JE

copy to counsel & def

FMH

The body of the document reads:

Court finds that Plaintiff was in open, notorious, hostile and adverse possession of all property west of the original fence line.

The original fence line is found as follows:

The northeast corner of plaintiff's property begins where the tree in Plaintiff's Exhibit 27 formerly stood but was dozed down, thence south at an angle to the old southeast corner represented in Plaintiff's Exhibit Numbers 14 and 15.

Defendant to restore fence and pay Plaintiff's costs.

Approved by the District Judge of Bryan County, Nineteenth Judicial District, this 18th day of October, 2004.

IT IS SO ORDERED!

S/ Ferrell M. Hatch

Ferrell M. Hatch

District Judge

¶ 8 No other form of order or journal entry was prepared and filed according to the record before this Court. However, in a subsequent proceeding, on September 23, 2005, Smith was found to be in contempt of the October 18th Order because he did not replace the fence as ordered, but put it on the survey line.[10] During the contempt proceeding, the trial judge repeatedly referred to what he had ordered done and that he determined the fence line boundary was established by adverse possession. Smith was adjudicated to be in contempt and directed to "build a fence on the property line that was previously ordered" or be fined and jailed.[11] It does not appear from the record that any party appealed either the October 18th Order or the subsequent contempt finding.

¶ 9 On March 25, 2006, Doyle filed, in Doyle I, a motion for a temporary injunction against Smith. A new trial judge was assigned because the original judge had retired. Doyle also named D. Smith and her husband as defendants, stating that they claimed some interest in the land in issue by reason of a deed dated and filed *August 14, 2002.* Doyle's Motion set out the case history including the contempt finding. She alleged that Smith had not complied and that she caused a fence to be built on the fence line established by the October 18th Order. She claimed that Smith began to tear the fence down and intended to build another at a location on her property.

¶ 10 On April 24, 2006, D. Smith and her husband specially appeared seeking dismissal of the injunction motion. They maintained that they were not parties to Doyle I and that adding them in post-judgment proceedings is not permitted. The court dismissed them and granted Doyle time to refile a new action. Smith was ultimately sanctioned for failure to comply with the contempt finding entered subsequent to the October 18th Order.[12]

¶ 11 Doyle then sued D. Smith and her husband in a separate action brought on June 21, 2006 (Doyle II). Doyle's petition alleges the fact of the conveyance from Smith to his daughter D. Smith and her husband. Doyle claimed that she owned that portion of the land conveyed by Smith, which was west of the common fence line, by adverse possession and by virtue of the decision in Doyle I.

¶ 12 Now divorced, Dana Smith, answered and admitted the existence of a historic fence. She denied Doyle's claim of adverse possession. She denied that she was bound in any manner by Doyle I. In a counterclaim, D. Smith alleged ownership of a parcel of land out of the ten-acre tract adjacent to Doyle by virtue of a conveyance from Smith dated August 14, 2002. The parcel consisted of approximately one acre and a road easement.

9. Record, p. 123.

10. Record, pp. 129–30.

11. Record, pp. 129–30.

12. Record, p. 141.

¶ 13 D. Smith alleged that the fence, in place for more than fifteen years, was the boundary by acquiescence of the owners of the lands on each side of the fence. She alleged that the fence was situated, in part, to the west of the line established by the legal description, and thus partially on Doyle's side. She claimed title also by adverse possession as to the land situated east of the fence. Last, she alleged that Doyle had constructed a new fence which encroached on the land she claimed as a result of the historic fence boundary. Her request for relief included quieting title and removal of the newly constructed fence.

¶ 14 Then, on July 26, 2006, Smith sued Doyle (Doyle III) claiming that Doyle unlawfully erected a fence on the Smith property.[13] The petition alleges that Smith owns the entire twenty-acre tract, which includes the parcel in the ten acres Dana Smith supposedly owns as of August 14, 2002. In response, Doyle denied any illegal action and alleged ownership of the land she fenced by virtue of the trial court order in Doyle I. Doyle II and Doyle III were consolidated, over Doyle's objection, and tried to the court.

¶ 15 The dispute in Doyle II and Doyle III concerned the new fence erected by Doyle. Smith testified, using recent photographs, that the old fence line actually lay west of the survey boundary so that using the Doyle I boundary would result in a fence that took in a portion of Doyle's property. He further testified that a new fence, erected by Doyle or members of her family, did not follow the old fence line and encroached up to fifty-five feet easterly onto his property and that of his daughter. He stated that his desire was to have the fence placed on the survey line.

¶ 16 Doyle and her daughter testified. Doyle's daughter had participated in erecting the new fence. Their evidence was that the new fence followed the historic fence line and conformed to the Doyle I order. When asked whether she paid taxes on the land, she responded that she owned eighty acres "more or less" and paid the taxes on the land.

¶ 17 After the trial, and before a decision, the court directed the parties to brief the question of whether Doyle I disposed of Doyle II and Doyle III by *res judicata* or estoppel.[14] After the parties briefed the issue, the court ruled that Doyle I did not dispose of Doyle II and Doyle III for the reason that the prior litigation did not result in a final judgment.

¶ 18 The court then decided the issues in favor of Smith and Dana Smith, with a finding that Doyle did not adversely possess the land in issue. The court directed that the fence be placed on the survey line at Doyle's expense. Doyle appeals.

## STANDARD OF REVIEW

[1] ¶ 19 The availability of the doctrine of issue preclusion presents a question of law to be reviewed *de novo*. Whether it applies under the facts presented here calls for an exercise of the trial court's discretion, which this Court reviews for abuse of that discretion. *Cities Serv. Co. v. Gulf Oil Corp.*, 1999 OK 14, ¶ 12, 980 P.2d 116, 124; *Wilson v. City of Tulsa*, 2004 OK CIV APP 44, ¶ 8, 91 P.3d 673, 677.

## ANALYSIS AND REVIEW

¶ 20 Smith and D. Smith joined their argument before the trial court and here. First, they argued that there must be a final order before an action may have preclusive effect

---

13. The trial in Doyle II and Doyle III brought out that there were three fences built, in addition to the historic fence. The first fence, erected by Smith, precipitated Doyle I and was removed. The second, also erected by Smith, was built to comply with Doyle I, but did not do so according to Doyle and was removed and Smith was directed to give Doyle money to erect the fence. The third fence, erected by Doyle, is the subject of Doyle II and Doyle III. Doyle II Transcript, p. 62,

14. The trial court took judicial notice of all of the records of Doyle I for the purpose of ruling on the preclusive effect of Doyle I. Court Memorandum dated "3/13/07," Record, p. 24. All of these records, including the trial transcript, are part of the record on appeal. However, the trial transcript was not prepared and filed at that time and could not have been reviewed. The reporter's certificate bears the date October 30, 2007, and the district court clerk's file stamp is dated November 1, 2007.

and that the absence of a final, appealable order is fatal to the argument that Doyle I must be afforded preclusive effect.[15] They characterize the October 18th Order as a nonfinal minute order, which would not authorize an appeal. Second, they assert that Doyle I could not have any preclusive effect as to D. Smith because she, D. Smith, was not a party.

¶ 21 Therefore, the initial question here is to decide whether the trial court's October 18th Order qualifies as a judgment and then, if a judgment, whether it is final for purposes of giving it preclusive effect. A ruling that the October 18th Order is a final judgment would then lead to an examination of its preclusive effect as to Smith and D. Smith.

### A. Does the October 18th Order Qualify as a Judgment?

■ ¶ 22 Although the trial court did not elaborate on its reasoning, it appears that the premise for the trial court ruling that the October 18th Order of Doyle I was not a final judgment was that no appealable order had been entered. In order to prosecute an appeal, the appellate record must contain a written memorialization of the action taken by the trial court which constitutes the appealable event. *Depuy v. Hoeme,* 1989 OK 42, ¶ 8, 775 P.2d 1339, 1342–43. *Depuy* presented a similar, but distinguishable, fact sit-

uation and many of the principles applied there are instructive.[16]

¶ 23 *Depuy* involved an oral, postjudgment *order* and the issue was whether that order was final. The definition of a final order is set out in 12 O.S.2001, § 953.[17] However, because the *Depuy* postjudgment order was not memorialized, the Supreme Court directed that a hearing be held to determine what the postjudgment order provided and then to determine whether it met the definition of Section 953, before its preclusive effect could be ascertained.

■ ¶ 24 In Doyle's case, there are two issues for resolution. The first issue is to determine whether there has been a judgment. A judgment is defined in 12 O.S.2001, § 681.[18] A judgment is effective, valid and enforceable notwithstanding the fact that it has not been reduced to a written journal entry. *Depuy,* 1989 OK 42 at ¶ 9, 775 P.2d at 1343.

■ ¶ 25 The second issue, if there is a judgment in Doyle I, is to determine whether that judgment has been memorialized in statutory form so as to make the judgment final *and* appealable.[19] The deadline for filing an appeal is triggered by the filing of the written judgment, with a mailing exception not applicable here. 12 O.S. Supp.2007, § 990A(A). Section 990A(A) also requires that the written judgment must comply with 12 O.S.

---

15. *Depuy v. Hoeme,* 1989 OK 42, ¶ 10, 775 P.2d 1339, 1343–44 and n. 23 ("While the 'finality' requirement has troubled courts and oft times its application may vary with the circumstances, all courts agree that, after the expiration of appeal time when no appeal has been taken, a judgment acquires the degree of finality requisite for the application of *res judicata* doctrine.")

16. *Depuy* is sometime referred to as *Depuy II* because of a prior appeal involving the underlying merits of the parties' dispute decided in *Depuy v. Hoeme,* 1980 OK 26, 611 P.2d 228. *Depuy II* differs from Doyle's case in these respects. *Depuy II* involved an oral, *postjudgment order* enforcing the underlying *judgment.* The order was never memorialized and the trial judge died. The *Depuy II judgment* had been memorialized and was on appeal when the oral, postjudgment order was given. In Doyle's case the concern is whether there is a *judgment,* where the record contains a written, signed document (the October 18th Order), together with a trial transcript and

court record. In addition, the subsequent enforcement order (contempt) is memorialized and a transcript of that proceeding is also available.

17. Section 953 provides:

An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment, is a final order, which may be vacated, modified or reversed, as provided in this article.

18. Section 681 provides:

A judgment is the final determination of the rights of the parties in an action.

19. If there is a judgment which has not been memorialized, then *Depuy II* instructs that an adversary hearing must be conducted to reduce the judgment to writing and provide its content.

Supp.2007, § 696.3.[20]

¶ 26 Once these two issues are determined, then the next step is to determine whether Doyle I has preclusive effect if a *final judgment* exists.[21]

¶ 27 This Court finds that the October 18th Order constitutes an enforceable judgment, both as to definition and content. Doyle and Smith had a boundary dispute over whether their boundary was an old fence line or the survey line. Testimony and exhibits were presented in a full bench trial. The trial court's October 18th Order completely resolves the boundary dispute. This determination is aided by the fact that the original trial judge, during the subsequent contempt hearing in this same matter, stated that he had done so and then enforced his judgment by contempt.[22]

¶ 28 Examination of the record shows that the October 18th Order contains the caption, parties, case number, and title, the relief provided and obligations imposed, and the signature and title of the court. The document has the court clerk's file stamp and deputy's signature. The October 18th Order thus meets the criteria for and is a judgment. This Court further rules that the trial judge's handwritten minute (Record, p. 122) and notation on the October 18th Order are surplusage and do not transform what otherwise qualifies as a judgment by definition and content into an abstract or minute of the court's action.[23]

¶ 29 This Court, based on the above, answers the captioned question in the affirmative. The October 18th Order is a Judgment. However, the question of finality and appealability is answered in the following section.

## B. Finality of October 18th Order as to Smith

¶ 30 The foregoing does not resolve whether the Order's appeal time had expired. The October 18th Order was prepared by the trial judge, but it does not contain a mailing

---

**20.** The evidence of the existence of a judgment and its content is the written judgment bearing the judge's signature. *Depuy*, 1989 OK 42 at ¶ 9, 775 P.2d at 1343. Section 696.3 provides for the contents of final judgments.

> A. Judgments, decrees and appealable orders that are filed with the clerk of the court shall contain:
> 1. A caption setting forth the name of the court, the names and designation of the parties, the file number of the case and the title of the instrument;
> 2. A statement of the disposition of the action, proceeding or motion, including a statement of the relief awarded to a party or parties and the liabilities and obligations imposed on the other party or parties, including the amount of any prejudgment interest;
> 3. The signature and title of the court; and
> 4. Any other matter approved by the court.
> B. Judgments, decrees and appealable orders that are filed with the clerk of the court may contain a statement of costs, attorney fees and interest other than prejudgment interest, or any of them, if they have been determined prior to the time the judgment, decree or appealable order is signed by the court in accordance with this section.
> C. The clerk shall endorse on the judgment, decree or appealable order the date it was filed and the name and title of the clerk.
> D. A file-stamped copy of the judgment, decree, or appealable order shall be served upon all parties, including those parties who are in default for failure to appear in the action, as provided in Section 696.2 of this title.

**21.** Doyle has not presented an argument, based on *Depuy*, that the postjudgment contempt decree has any preclusive effect.

**22.** In the contempt hearing, testimony was given characterizing the trial court's decision as a final judgment that was not appealed. Smith did not object or dispute this characterization. Contempt Tr., p. 7. The trial judge referred to his Order in addressing Smith. Contempt Tr., pp. 15, 26, 30–31, 37, 39. Smith made no objection and his argument for nonpayment was that he was discharged in bankruptcy.

**23.** A minute contains only a "very brief description of the order or judgment rendered." 12 O.S.2001, § 23; *Mansell v. City of Lawton*, 1994 OK 75, ¶ 1, 877 P.2d 1120, 1121. Preparation of minutes is usually a function of the clerk, but the court may also prepare minutes, and the minute "must not be encumbered with a detailed recital of the terms." 12 O.S.2001, § 23; *compare Corbit v. Williams*, 1995 OK 53, 897 P.2d 1129. In *Corbit*, the trial court's order was written on a printed form titled "Court Minute," but otherwise contained the content from Section 696.3. The Supreme Court ruled that this document in *Corbit* did not qualify as an order *commencing the statutory appeal time* because of the "Court Minute" title and the statute, Section 696.2(C) now Section 696.2(D), specifically exempts a minute entry as a qualifying document for purposes of appeal.

certificate as part of the document. 12 O.S. Supp.2007, § 696.2(B). When the mailing certificate is absent, Section 990A(A) provides that "the petition-in-error may be filed within thirty (30) days after the earliest date on which the court records show that a copy of the judgment, decree, or appealable order was mailed to the appellant." If the thirty days-after-mailing is applicable, then the filing of the October 18th Order without a mailing certificate was not an appealable event initiating the running of the time to file an appeal. 12 O.S. Supp.2007, § 696.2(D); *McMillian v. Holcomb*, 1995 OK 117, ¶ 6, 907 P.2d 1034, 1036.

¶ 31 The state of the record before this Court shows that a judgment was entered and memorialized in statutory form. Before a judgment will have any preclusive effect it must be final. The appellate record shows that the time within which an appeal has to be filed was not initiated because of the lack of mailing and the judgment therefore does not meet all of the statutory requirements *prerequisite to an appeal* from the filed judgment. Hence, it must be determined that the Judgment in Doyle I is not a "final" order for appeal purposes. Therefore, the question then becomes whether "final order" for purposes of appeal is identical to "final order" for purposes of giving preclusive effect.

### 1. Finality and Appeal

■ ¶ 32 The reason for a final order or judgment to be filed and recorded for purposes of appeal is to show that the trial court litigation is at an end. In general, only at such time is there a cause subject to appellate review. Moreover, the absence of finality would not promote judicial economy and would entail the Appellate Court's having to decide issues before the trier of fact has reached a final determination, especially when the facts dictate the legal conclusion.

*Jerry Scott Drilling Co., Inc. v. Scott,* 1989 OK 131, ¶¶ 7, 10, 781 P.2d 826, 828–29. In ruling on the appeal of nonfinal orders and judgments, the Oklahoma Supreme Court, in *Oklahoma City Land & Dev. Co. v. Patterson,* 1918 OK 610, ¶ 5, 175 P. 934, 935, stated:

> If such orders as were entered in this case were appealable to this court for review before final judgment, there would never be any end of litigation. It would furnish a method and means by which litigation could be carried on ad infinitum. Public policy requires that there should be an end to litigation at some time, and for that reason our statute has wisely provided a salutary rule which does not permit an appeal to this court from an interlocutory order or ruling made by the trial court during the trial of a cause unless specially authorized.

¶ 33 Therefore, this Court holds that the record before this Court shows that the October 18th Order in Doyle I is not a final order for purposes of appeal. The reason is that the appeal time has not began to run due to the failure or lack of service by mailing or personal service to the parties.

### 2. Finality And Preclusive Effect

■ ¶ 34 There are three general types of preclusive effect between the parties to a judgment (such as Doyle and Smith). These are: (a) "merger" where a judgment for plaintiff merges the claim; (b) "bar" where a defendant's judgment extinguishes the claim; and (c) "issue preclusion" where the effect of the determination of an issue in another action between the parties on the same claim (direct estoppel) or a different claim (collateral estoppel) precludes further action on the claim at hand. All three are now broadly referred to as *res judicata.* Restatement (Second) of Judgments, IN. NT and §§ 17, 27 (1982).[24]

---

24. Section 17 reads:

A valid and personal judgment is conclusive between the parties, except on appeal or direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, the claim is extinguished and *merged* in the judgment and a new claim may arise on the judgment (see § 18);

(2) If the judgment is in favor of the defendant, the claim is extinguished and the judgment *bars* a subsequent action on that claim (see § 19);
(3) *A judgment in favor of either the plaintiff or the defendant is conclusive, in a subsequent action between them on the same or a different claim, with respect to any issue actually litigat-*

¶ 35 The Restatement distinguishes that which constitutes "finality" in merger and bar from "finality" in issue preclusion. Restatement of Judgments (Second), § 13 (1982).[25] In Comment b of Section 13, the Restatement equates finality of a judgment for purposes of appeal with finality for purpose of bar or merger of claims. Thus, on the record before this Court, the judgment of Doyle I would not operate as a bar or merger because the appeal time has not been shown to expire.

¶ 36 However, the Restatement offers a less strict rule for the "issue preclusion" category. In Section 13, comment g, the Restatement maintains that, when dealing with issues, as opposed to claims, rigidity can work hardship, duplication of effort, unnecessary expense, and result in inefficient use of court time.

¶ 37 The Oklahoma Supreme Court follows the Restatement position. *See Oklahoma Dept. of Public Safety v. McCrady,* 2007 OK 39, 176 P.3d 1194.[26] The Court ruled:

In accordance with the doctrine of issue preclusion (previously known as collateral estoppel), once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim. The principle of issue preclusion operates to bar from relitigation both correct and erroneous resolutions of jurisdictional and nonjurisdictional challenges. An issue is actually litigated and necessarily determined if it

is properly raised in the pleadings, or otherwise submitted for determination, and judgment would not have been rendered but for the determination of that issue. The doctrine may not be invoked if the party against whom the earlier decision is interposed did not have a "full and fair opportunity" to litigate the critical issue in the previous case. For invocation of issue preclusion there need not be a prior adjudication on the merits (as is often the case with res judicata) **but only a final determination of a material issue common to both cases.** (Emphasis original.)

*Oklahoma Dept. of Public Safety,* 2007 OK 39 at ¶ 7, 176 P.3d at 1199 (citing Restatement (Second) of Judgments § 27, cmt. b (1982)).

■ ¶ 38 Other Courts agree and discuss the element of finality. *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir.1961) cert. den., 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (whether a judgment, not "final," within meaning of a statute pertaining to appeals from final decisions of district courts, ought nevertheless be considered "final," in the sense of precluding further litigation of the same issue, is dependent upon such factors as nature of the decision, adequacy of the hearing, and opportunity for review.) " 'Finality'... may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Id. Asahi Glass Co. Ltd. v. Toledo Engineering Co., Inc.,* 505 F.Supp.2d 423 n. 2 (N.D.Ohio 2007).[27]

> The rules of res judicata are applicable only when a final judgment is rendered. *However, for purposes of issue preclusion, (as distinguished from merger and bar), "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.* (Emphasis added.)

---

**25.** Section 13 reads: ed and determined if its determination was essential to that judgment. (Emphasis added.) Section 27 is essentially the same language as Section 17(3).

At one time the nomenclature was "claim preclusion" and "issue preclusion." The former had been called *"res judicata"* and the latter "collateral estoppel." Under "claim preclusion," or *res judicata,* a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308.

**26.** Although the Opinion cited Section 27 and comment b, and not Sections 13 or 17, all three Sections provide for the same principle. See n. 24 and n. 25.

**27.** Another Federal District Court reached this same conclusion in a case not reported in the Federal Supplement. *O'Diah v. New York City,* 2002 WL 1941179 (S.D.N.Y.2002).

¶ 39 Wisconsin applies Section 13 of the Restatement. *In re Jaynes*, 377 B.R. 880, 884 (Bankr.W.D.Wis.2007) (citing *Estate of Rille v. Physicians Ins. Co.*, 2007 WI 36, 300 Wis.2d 1, 728 N.W.2d 693 (2007)). Whether collateral estoppel is appropriate in any case to preclude relitigation of an issue is dependent upon a determination of fundamental fairness by the trial judge. One factor is the prior opportunity to adequately litigate the issue. *Michelle T. by Sumpter v. Crozier*, 173 Wis.2d 681, 495 N.W.2d 327, 335 (1993); *see People v. Cooper*, 149 Cal.App.4th 500, 57 Cal.Rptr.3d 389, 406–7 (2007).

¶ 40 In Doyle I, the trial court determined that the Doyle–Smith boundary was fixed by the old fence line and not the survey line. The trial court further determined the location of that fence line boundary. There was a full trial on the merits, thus affording Doyle and Smith the opportunity to litigate these issues. The boundary determination and location of the fence line were a necessary and an integral part of the Doyle I judgment. There was nothing tentative about the judgment in Doyle I.[28] Based upon the contempt hearing, it is clear that Smith knew the terms of the judgment and had an opportunity to seek review and apparently failed to do so.[29] Whether the Doyle I judgment was final for appeal purposes is not a sufficient reason to relitigate these issues. There is nothing in the appellate record showing any reason to litigate these issues again after Doyle I. The judgment in Doyle I is final for purposes of claim preclusion.

¶ 41 In Doyle III, Smith sought to relitigate the boundary and fence line location. These issues are precluded by the judgment in Doyle I. This Court determined above that there had been a judgment on the merits in writing in statutory form in Doyle I. It is not necessary that such a statutorily complete and "final" judgment exist for enforcement or preclusion. *Oklahoma Dept. of Public Safety*, 2007 OK 39 at ¶ 7, 176 P.3d at 1199.

¶ 42 Therefore, this Court holds that the trial court erred by its ruling denying preclusive effect to Doyle I as to Smith's claim in Doyle III. The boundary is the old fence line, as provided in the Doyle I judgment, and not the survey line. The only issues which might still exist are whether Doyle erected the fence in accordance with the Doyle I judgment and whether Doyle's costs have been paid or discharged in Bankruptcy. However, these are issues germane to Doyle I post-judgment enforcement proceedings. Therefore, the judgment of the trial court in Doyle III is reversed and the cause is remanded with instructions to dismiss the Doyle III action.

## C. Preclusive Effect as to D. Smith

[9] ¶ 43 D. Smith was not a named party to Doyle I. She testified therein as a witness without mentioning the deed to her from her father, Smith, conveying to her an acre and an easement that are affected by the boundary dispute. She recognized the fence line as the boundary and conducted herself accordingly, as did her father. In Doyle I, Smith testified that he had not conveyed any of his twenty acres. The evidence, arguments, legal principles and judgment governing Doyle and Smith in Doyle I apply equally to Doyle and Smith in Doyle II.

¶ 44 The fact is that the conveyance to D. Smith preceded the Doyle I trial-but not the filing of the case. However, the record does not show that a *lis pendens* notice was filed of record. 12 O.S.2001, § 2004.2(A)(1). Moreover, the record does support a conclusion that the daughter had actual knowledge of the Doyle I lawsuit from its inception. She had a confrontation with Doyle, prior to the filing, over the old fence removal.[30] She participated in removing the old fence.[31] She

---

28. The written judgment closes, **"IT IS SO ORDERED!"** in bold type and with the emphasis punctuation mark. Moreover, the trial court held Smith to be in contempt for violation of the October 18th Order.

29. He also claimed to be discharged from the monetary portion of the judgment by his bankruptcy. Knowledge of the existence and terms of the judgment would be necessary to present this argument.

30. Doyle I, Tr., p. 132.

31. Doyle I, Tr. p. 131.

was present when Smith was served in Doyle I.[32]

¶ 45 The comments to the Restatement (Second) Judgments, § 44 (1982), offer a position when there is a transfer of property while the action is pending to a transferee who has knowledge of the action, but does not join the action. The Restatement, comment a, takes the position that the transferee has acquiesced in having the transferor continue to be the apparent owner and effectively treats the transferor as his representative in the action. In such cases, the transferee is bound by the judgment and, here, D. Smith under the Restatement, is bound in the same manner as Smith.

¶ 46 In Doyle I, D. Smith's testimony was consistent with Smith, her father, that Smith was the owner of the entire twenty acres and, for purposes of the trial, she treated him as the apparent owner. Based on the record, this Court finds that D. Smith effectively treated Smith as her representative to protect her property interest in Doyle I and was in privity with her father, Smith. The legal consequences of this finding have a role in the concept of privity.

¶ 47 To be in privity, a party must "actually have the same interest, character, or capacity as the party against whom the prior judgment was rendered." *Hildebrand v. Gray*, 1993 OK CIV APP 182, ¶ 16, 866 P.2d 447, 450–51. There are no hard and fast rules; the existence of privity depends upon the circumstances and requires " 'a person so identified in interest with another that he represents the same legal right.' " *Wilson v. City of Tulsa*, 2004 OK CIV APP 44, ¶ 11, 91 P.3d 673, 677 (quoting *Hildebrand* ).

¶ 48 Court decisions speak of privity between parties, such as D. Smith, and Smith as a prerequisite to giving Doyle I preclusive effect in Doyle II against D. Smith. Three classes of privity situations are given.

A privy is defined as: 1) a non-party who has succeeded to a party's interest in prop-

erty (a successor in interest); 2) a non-party who controlled the original suit; or 3) a non-party whose interests were adequately represented by a party in the original suit (through "virtual" or "adequate" representation).

*Asahi Glass Co., Ltd. v. Toledo Eng. Co., Inc.*, 505 F.Supp.2d 423, 434 (N.D.Ohio, 2007).

¶ 49 The first does not apply here. The second is not here applicable as there is no evidence supporting a conclusion that D. Smith controlled the Doyle I lawsuit. However, the facts established by the record and this Court's finding that D. Smith acquiesced in having Smith represent her property interest bring into consideration the third definition.

¶ 50 The concept of "virtual" or "adequate" representation was reviewed in *Becherer v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 43 F.3d 1054 (6th Cir.1995) cert. den., 516 U.S. 912, 116 S.Ct. 296.[33] In *Becherer* the court stated:

The doctrine of adequate representation is also known as virtual representation.[34] This concept has been developed primarily by the Fifth Circuit, Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4457 (1981). In the words of the Fifth Circuit, the doctrine of virtual representation

requires more than a showing of parallel interest or, even, a use of the same attorney in both suits . . . . The question of virtual representation is one of fact and is to be kept within "strict confines." . . . . Virtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues.

*Becherer*, 43 F.3d at 1070.

¶ 51 The elements of virtual representation were set out in *Waddell & Reed Financial,*

---

**32.** Doyle I, Tr., p. 144.

**33.** This Court is mindful of the Due Process of Law implications of the "virtual representation" doctrine.

**34.** The concept is discussed in Am.Jur.2d. Judgments, § 596.

*Inc. v. Torchmark Corp.*, 180 F.Supp.2d 1235, 1245 (D.C.Kan.2001).

> To support a finding of virtual representation, the Court ordinarily must find that the parties in the earlier action were in some sense proper agents for the latter parties so as to support preclusion of the latter claim.... Such an agency relationship may arise, for example, where the party in the first suit had some obligation to safeguard the interests of the party to the second suit.... ("A court will apply virtual representation only when it finds the existence of some special relationship between the parties justifying preclusion."), (*"Virtual representation* demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues.") ... ("the parties' independence-the inescapable fact that the [prior] plaintiffs were not legally responsible for, or in any other way accountable to, the [nonparty] plaintiffs-weighs heavily against a finding of virtual representation") ... (interests of nonparty must be adequately represented by another vested with authority of representation) ... ("The doctrine of virtual representation does not authorize application of a bar to relitigation of a claim by a nonparty to the original judgment where the interests of the parties to the different actions are separate or where the parties to the first suit are not accountable") (citations omitted) (emphasis added).

*Id.*

¶ 52 Moreover, D. Smith's testimony and position in Doyle I relative to her silence on her ownership also give rise to another form of estoppel in Doyle II.

> There is a kind of *evidential estoppel* which, though it may not amount to complete estoppel in pais, is raised when persons who have spoken or acted one way under one set of circumstances, and with one objective in mind, undertake under other circumstances and when their objective has changed, to testimonially give different color to what they formerly said and did.

*Holly Hill Citrus Growers' Ass'n v. Holly Hill Fruit Products, Inc.*, 75 F.2d 13, 17 (5th Cir.1935); *In re Gilmore*, 221 B.R. 864, 879 (Bankr.N.D.Ala.1998); *see State Farm Fire & Cas. Co., v. Evans*, 956 So.2d 390, 393 (Ala.2006). (Emphasis added).[35]

¶ 53 Further, application of the companion equitable doctrine of "clean hands" is likewise suggested by D. Smith's testimony in Doyle I. "Equity will not lend its aid to one seeking its active interposition, who has been guilty of unlawful or inequitable conduct in the matter with relation to which he seeks relief." *Camp v. Camp*, 1945 OK 234, 163 P.2d 970 (Syl.).

¶ 54 Both doctrines, evidential estoppel and clean hands, support a finding that D. Smith should also be bound by the judgment in Doyle I by application of the virtual representation rule. Her interest in having the fence located other than on the old fence line coincided with her father's, Smith's, interest. He represented that he owned all of his twenty acres and had not transferred any portion of the acreage. D. Smith testified as to Smith's ownership of all of the land on his side of the fence with full knowledge of her ownership in part of the property.

¶ 55 Therefore, this Court finds that there is privity between Smith and D. Smith and that the doctrine of virtual representation applies under the facts. The Doyle I judgment is final as to D. Smith just as for Smith. The scope of the preclusive effect of Doyle I is also the same for D. Smith as it is for Smith. Therefore, the judgment in favor of D. Smith in Doyle II is reversed and the case is remanded with instructions to enter judg-

---

**35.** Doyle obliquely argues this principle at page 11 in the opening Brief. "Evidential estoppel" differs from judicial estoppel in that the latter doctrine provides a *party* who knowingly assumed a particular position dealing with matters of fact is estopped from assuming an inconsistent position to the prejudice of the adverse party. This rule ordinarily applies to inconsistent positions assumed in the course of the same judicial proceeding or in subsequent proceedings where the *parties* and questions are identical. *Harding & Shelton, Inc. v. The Prospective Investment and Trading Co., Ltd.*, 2005 OK CIV APP 88, ¶ 27, 123 P.3d 56, 64. D. Smith was not a party in Doyle I, but was privy with Smith.

ment for Doyle as to the boundary and fence line in accordance with Doyle I.

## CONCLUSION

¶ 56 This Court holds that the doctrine of issue preclusion is here applicable to Doyle in Doyle III so as to bar Smith from relitigation of the boundary and fence line locations in Doyle III. The predicate action, Doyle I, has a memorialized judgment. Although the record does not affirmatively show that the appeal time has expired in Doyle I, the element of finality is satisfied, under the record before this Court, because the Doyle I judgment is "sufficiently firm" so as to be accorded preclusive effect for purposes of issue preclusion and can therefore be classified as to this litigation as final.

¶ 57 Next, this Court holds that the doctrine of issue preclusion is available to Doyle so as to bar D. Smith from relitigation of the boundary and fence line location in Doyle II. Under the facts and equities of the case, as shown by the record, there is privity between D. Smith and Smith. The predicate judgment in Doyle I satisfies the finality requirement as to D. Smith for the same reason it is satisfied as to Smith.

¶ 58 Last, this Court holds that the trial court's failure to apply issue preclusion in these cases constitutes an abuse of discretion under the facts and law of this case. Therefore, the judgment of the trial court in the matter of Nancy Doyle versus Dana Smith is reversed and the cause is remanded with instructions to enter judgment for Nancy Doyle against Dana Smith establishing the boundary and fence line in accordance with the judgment in Doyle I. The judgment in the matter of James A. Smith and Dorothy L. Smith versus Nancy Doyle is reversed and the cause is remanded with instructions to dismiss the action.

¶ 59 REVERSED AND REMANDED WITH INSTRUCTIONS.

BARNES, J., concurs, and GOODMAN, Acting P.J. (sitting by designation), concurs in result.